Melvyn M. LOUIS, Plaintiff,

v.

ENCORE COMPUTER
CORP., Defendant.

No. 95–7056–CIV–KING.

United States District Court,
S.D. Florida.

Nov. 27, 1996.

William R. Amlong, Ft. Lauderdale, FL, for Plaintiff.

Robert Kofman, Annette Torres, Miami, FL, for Defendant.

### ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

JAMES LAWRENCE KING, District Judge.

THIS CAUSE, arising out of Complaint alleging age discrimination in employment, comes before the Court upon a Motion For Summary Judgment, filed by Defendant, Encore Computer Corp., on October 8, 1996. Plaintiff, Melvyn M. Louis, responded in opposition on October 23, 1996. The Court conducted a hearing on October 25, 1996. Defendant filed a Reply on November 12, 1996.

### I. FACTUAL BACKGROUND

Plaintiff, who at age 61 was fired from her job as a supervisor of Defendant corporation's Repair Services group, alleges Defendant fired her in violation of the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. §§ 621–634, and the Florida Civil Rights Act of 1992, Fl.Stat. §§ 760.01–760.11. The firing, in July 1995, occurred as part of a reduction in force ("RIF"), one of the RIFs that Defendant had conducted, on average, each year since 1989. Those RIFs, necessitated by losses of about

$60 million annually, have reduced Defendant's work force from 2,000 employees in 1989 to 700 employees in 1996. The work performed and the revenues generated by the Repair Services group declined significantly during that time.

Plaintiff had worked for the company or its predecessors continuously since September 1970 and had worked in numerous positions. As supervisor of the Repair Services group, Plaintiff occupied an organizational level equal to that of Gary Matthews, supervisor of the Material Control and Distribution group. Both supervisors reported directly to Ed Baker, the finance controller, who reported to James P. Dacey, chief of the Business Operations Department.

In late June 1995, Baker was instructed by Vice President Robert Dinanno to reduce the Business Operations Department by ten percent. He decided that the company needed only one person to handle supervisory duties for the Repair Services and the Material Control and Distribution groups. He chose to eliminate Plaintiff's position, to keep Matthews, and to fire Plaintiff. Dacey approved Baker's recommendation, and Baker, on July 10, 1995, informed Plaintiff she was fired.

It is important to note that, on May 23, 1995, during a conversation between Plaintiff and Baker, Plaintiff volunteered to be included in any upcoming RIF, if her inclusion meant that someone with a family to support would not be laid off.[1] The day after she was fired, she sent an E-mail to several co-workers in which she said, "I had volunteered to be 'let go' if the decision came to someone who has a younger family and guess what?" (Def.'s Mot.Summ.J., Ex. H.) Of these statements regarding Plaintiff's volunteering to be laid off, more *infra*.

## II. LEGAL STANDARD

Summary judgment is appropriate only where there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The Court must view the evidence in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 2513–14, 91 L.Ed.2d 202 (1986).

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. If the movant meets this burden, the burden then shifts to the nonmoving party to establish that a genuine dispute of material fact exits. *Hairston v. Gainesville Sun Publishing Co.*, 9 F.3d 913, 918 (11th Cir.1993). If the evidence relied on is such that a reasonable jury could return a verdict in favor of the nonmoving party, then the Court should refuse to grant summary judgment. *Hairston*, 9 F.3d at 919. However, a mere scintilla of evidence in support of the nonmoving party's position is insufficient to defeat a motion for summary judgment. *Anderson*, 477 U.S. at 252, 106 S.Ct. at 2512. If the evidence is merely colorable or is not significantly probative, summary judgment is proper. *Id.* at 249–50, 106 S.Ct. at 2510–11.

## III. DISCUSSION

### A. Plaintiff's Burden of Establishing a Prima Facie Case

The Court, in determining whether Defendant violated the ADEA or FCRA,[2] must first decide whether Plaintiff has stated a prima facie case for age discrimination. A plaintiff may establish a prima facie case of age discrimination in any of three ways: 1) by presenting direct evidence of discriminatory intent; 2) by showing through statistics a pattern of discrimination; or 3) by satisfying the test set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Plaintiff's burden in

---

1. After the conversation, Baker recorded Plaintiff's statement in the May 23, 1995, page of his Daily Record of Events. (*See* Def.'s Mot. Summ.J., Ex. I.)

2. Plaintiff's ADEA and FCRA claims are based upon the same operative facts and governed by the same standards of proof. Federal District Courts faced with FCRA claims have applied the body of federal law interpreting the ADEA. *See Pettis v. Brown Group Retail, Inc.*, 896 F.Supp. 1163 (N.D.Fla.1995); *Bell v. Desoto Memorial Hospital, Inc.*, 842 F.Supp. 494 (M.D.Fla.1994); *Trumbull v. Health Care and Retirement Corp.*, 756 F.Supp. 532 (M.D.Fla.1991), *aff'd*, 949 F.2d 1162 (11th Cir.1991).

proving a prima facie case is light. *Isenbergh v. Knight–Ridder Newspaper Sales, Inc.*, 97 F.3d 436 (11th Cir.1996). Because Plaintiff here has made no attempt to prove a pattern of discrimination, the Court will not address the statistical-proof method.

## 1. Direct evidence

■ Plaintiff first seeks to avoid summary judgment by relying on what she claims to be direct evidence of discrimination. "Direct evidence of discrimination would be evidence which, if believed, would prove the existence of a fact ... without inference or presumption." *Carter v. City of Miami*, 870 F.2d 578, 581–82 (11th Cir.1989). "[O]nly the most blatant remarks, whose intent could be nothing other than to discriminate on the basis of age, ... constitute direct evidence of discrimination." *Id.* at 582.

As proof Plaintiff offers several comments that she attributes to Baker.[3] None of these rise to the level of direct evidence. The comments, however, may suggest discrimination, leaving the trier of fact to infer discrimination; thus, the evidence is circumstantial.

## 2. Circumstantial evidence

■ In determining whether Plaintiff has stated a prima facie case, Defendant urges the Court to apply the reduction-in-force test[4]; Plaintiff urges application of the failure-to-hire test.[5] In *Isenbergh*, the court stated, "[E]mployment discrimination cases are not easily categorized and ... any prima facie case test must be flexible." *Isenbergh*, 97 F.3d at 440 (citing *Pace v. Southern Railway System*, 701 F.2d 1383 (11th Cir.1983)). The *Isenbergh* court found good reason to treat the case as a failure-to-hire case, and thus to apply the elements attendant for proving a prima facie case of that type[6]; and equally good reason to treat the case as reduction-in-force case, and thus to apply the elements attendant for proving a prima facie case of that type[7]. The court then seemed to meld the two tests together, stating, "We need not crudely categorize the facts as involving either a failure to hire or a reduction in force. Instead, we examine the facts of the case and decide 'whether the plaintiff has presented sufficient evidence to provide a

---

3. At a May 23, 1995, meeting between the two, Plaintiff says Baker: 1) commented about Plaintiff's age; 2) remarked that at Plaintiff's age, her husband made enough money to support her; 3) said: "Mel, at your age, why don't you retire? After all, you will be 62 in January, so if you get laid off in June, your severance pay will take you through to Social Security"; 4) said: "I certainly hope that when I am your age I can retire. I hope you and your husband have been planning for that day"; 5) stated that, if he had to fire someone, he would hate to have to choose between someone like Plaintiff and someone with a family to support. (Pl.'s Mem.Opp'n Mot. Summ.J. at 11.) At the July 10, 1995, meeting at which Baker informed Plaintiff she was fired, Plaintiff says Baker told her he had to lay her off because he couldn't "lay of [sic] Gary [Matthews], Mel, he has a wife and three little kids." (*Id.*) (alteration in original.) Baker denies making any of the statements.

4. Defendant states the Court should treat the case as a reduction-in-force situation, as in *Earley v. Champion Int'l Corp.*, 907 F.2d 1077 (11th Cir.1990), because "Plaintiff's position was entirely eliminated in the RIF and her duties were undertaken by other employees." (Def.'s Mot. Summ.J. at 15.)

5. Plaintiff states the Court should treat the case as a failure-to-hire situation, as in *Carter v. City*

---

*of Miami*, 870 F.2d 578 (11th Cir.1989), because "the employment action at issue her [sic] is the choice between Plaintiff and Matthews as to who would fill the remaining supervisor position." (Pl.'s Mem. in Opp'n to Mot.Summ.J. at 12.)

6. *Carter*, 870 F.2d at 582, sets out the test a plaintiff must meet to establish a prima facie case in termination and failure-to-hire cases. The plaintiff must prove that: 1) he was a member of the protected group; 2) an adverse employment action was taken against him; 3) the person replacing him was younger than 40 (*but see* this note *infra*); and 4) he was qualified for the position for which he was rejected. The court drastically qualifies the third prong, stating that it must be treated with flexibility, and finding that plaintiff had established this element by showing she was replaced by a person younger than *her*, though not younger than 40. *Id.* at 583.

7. *Earley*, 907 F.2d at 1083, sets forth the test for an ADEA case involving a reduction in force. The plaintiff must show: 1) that he was in a protected group; 2) that he was qualified for his current position or to assume another position at the time of discharge or demotion; and 3) evidence by which a fact finder could reasonably conclude that the employer intended to discriminate on the basis of age in reaching the decision at issue.

basis for an inference that age was a factor in the employment decision.' " *Id.* (quoting *Pace,* 701 F.2d at 1387).

· The instant case closely resembles *Isenbergh* in that both involved a reduction in force from two supervisors to one, with the remaining supervisor performing a "new" job encompassing the duties—here, repair services and logistics/inventory—previously performed by the two. The Court thus prefers the *Isenbergh* approach to analyzing the prima facie case over either of the purer forms used in *Earley v. Champion International Corp.,* 907 F.2d 1077 (11th Cir.1990)[8] and *Carter*[9].

■ The parties do not dispute that Plaintiff is a member of a protected group (she is 40 or older); that an adverse employment action was taken against her (she was fired); and that the person who was hired for the remaining supervisor's job was younger than Plaintiff (Gary Matthews was younger, though his age does not appear in the record). They do disagree, however, on whether Plaintiff was qualified for the job.[10] The Court, construing the evidence in the light most favorable to the nonmoving party, finds that Plaintiff was at least minimally qualified for the position. Plaintiff served as Supervisor of Inventory Management Worldwide at Gould Electronics, the predecessor company to Defendant, from 1988 to mid–1991, a job that entailed inventory planning, a $20 mil-

lion inventory, and a staff of fifteen reporting directly to her. (Pl.'s Statement of Material Facts, Attach. 1 ¶¶ 1–5.)

■ Defendant further asserts that Plaintiff fails to meet the third prong of the *Earley* test, i.e., fails to show any evidence by which a fact finder could reasonably conclude that the Defendant, in firing Plaintiff, intended to discriminate against her based on her age.[11] The Court disagrees. Baker's comments, *see* note 2 *supra,* although not so blatant as to constitute direct evidence of discrimination, could "provide a basis for an inference that age was a factor," *Isenbergh,* 97 F.3d at 440 (quoting *Pace,* 701 F.2d at 1387), in the decision to fire Plaintiff.

## B. Defendant's Burden of Proffering a Nondiscriminatory Rationale

■ The Court next inquires whether Defendant has met its burden of producing a legitimate, nondiscriminatory reason for firing Plaintiff. *See Isenbergh,* 97 F.3d at 440. The Defendant's burden is one of production, not persuasion. *Id.* "If the burden is met, the *McDonnell Douglas* framework 'drops out' of the case, leaving the jury to decide the ultimate question of whether the employer intentionally discriminated on the basis of age." *Id.* Here, Defendant meets the burden by asserting that, because the RIF required that either Matthews or Plaintiff be

---

**8.** In *Earley,* one plaintiff's job was entirely eliminated—"most of the work was transferred to a computerized inventory control system." *Earley,* 907 F.2d at 1083. The same cannot be said in the instant case, wherein Baker acknowledges that one reason for retaining Matthews and firing Plaintiff was that he felt the former could do the latter's job but the converse was not true.

**9.** In *Carter,* no reduction in force was alleged, let alone thoroughly documented, as Defendant has done in the instant case.

**10.** On the one hand, Defendant avoids the issue of whether Plaintiff was qualified for the remaining supervisor's job by denying there was any job to be qualified for. "Plaintiff's position was entirely eliminated," (Def.'s Mot.Summ.J. at 15), and thus, under the *Earley* test, Plaintiff should have to prove she was qualified for another position at the Defendant corporation, which she failed to do. (*Id.* at 16.) On the other hand, however, Defendant acknowledges that Plaintiff's

duties "were undertaken by other employees," (*id.* at 15), and that, in deciding whom to keep—Matthews or Plaintiff—Baker decided to keep Matthews because Plaintiff was not qualified for Matthews' job but "Gary had the experience and the expertise to do both jobs." (Pl.'s Statement of Facts, Attach. 3 at 39.) The Court resolved the question of whether there was a job by finding that indeed there was and that, therefore, the Court should apply the *Isenbergh* (combination of failure-to-hire and reduction-in-force) approach rather than the *Earley* (pure reduction-in-force) approach to analyzing the prima facie case.

**11.** Having applied the *Isenbergh* approach up to this point, the Court notes that the *Isenbergh* court skipped over the third prong of the *Earley* test and concluded that the plaintiff had established a prima facie case. *Isenbergh,* 97 F.3d at 440. "Without deciding the ultimate question of whether a jury could reasonably infer intentional discrimination, we believe that Isenbergh has satisfied this part of the *McDonnell Douglas–Burdine* burden-shifting analysis." *Id.*

retained, Plaintiff, as the less qualified of the two and a volunteer for inclusion in a RIF, should be fired.

## C. Plaintiff's Burden of Proving Pretext

■ The above-quoted line from *Isenbergh*, stating that, once the employer meets its burden of production, the jury must decide the ultimate question of whether the employer discriminated, does not mean that this case should automatically be set for trial. Rather, it means that the case should go to trial only if it cannot be decided as a matter of law, i.e., if the employer's motion for summary judgment should be denied.

■ In a discrimination case, "because the plaintiff bears the burden of establishing pretext [for discrimination], he must present 'significantly probative' evidence on the issue to avoid summary judgment." *Young v. General Foods Corp.*, 840 F.2d 825, 829 (11th Cir.1988) (quoting *Celotex*, 477 U.S. at 322–23, 106 S.Ct. at 2552–53). "A plaintiff may do so 'either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence.'" *Goldstein v. Manhattan Industries, Inc.*, 758 F.2d 1435, 1442 (11th Cir.1985), *cert. denied* 474 U.S. 1005, 106 S.Ct. 525, 88 L.Ed.2d 457 (1985).

Defendant asserts that, faced with the undisputed material facts, no reasonable fact finder could find Defendant discriminated against Plaintiff on the basis of her age. She was included in the RIF, Defendant asserts, because: yet another in a string of RIFs was necessary, given the company's continuing losses; Matthews was better qualified than Plaintiff for the one supervisory position that would remain after the RIF; and Plaintiff volunteered, in May 1995, to be nominated for inclusion in any upcoming RIF.

Plaintiff asserts that genuine disputes over material facts exist. She does not dispute that a RIF was necessary. She denies, however, that Matthews was better qualified; and denies she meant what she said when she volunteered, on May 23, 1995, to be laid off, and again when she sent the E-mail to co-workers, on July 11, 1995, stating that she had volunteered to be laid off.

## IV. CONCLUSION

Arguing for Plaintiff are the disputes over the following material facts: 1) Baker's alleged statements about Plaintiff's age; and 2) whether Plaintiff should be considered qualified for the remaining supervisory position. Arguing for Defendant is the lack of dispute over the following material fact: 1) Plaintiff volunteered to be laid off.[12]

■ Because the RIF was indisputably necessary, and because only Matthews or Plaintiff would get the one remaining supervisor's slot, the supervisor not chosen had to be fired.[13] No law requires an employer, faced with one position for two applicants, to choose an older, statutorily protected employee (Plaintiff) over a younger, unprotected employee (Matthews). *Earley*, 907 F.2d at 1083 (citing *Barnes v. Southwest Forest Industries, Inc.*, 814 F.2d 607, 610 (11th Cir. 1987)). The law does mandate, however, that the age of an employee who is 40 or older not

---

12. The Court recognizes Plaintiff's explanation that no RIF was pending at the time she volunteered to be laid off, and she did so only because "I had stressed myself to the max and I was tired of fighting the system," (Def.'s Mot.Summ.J., Ex. J at 7); and her explanation that her E-mail, informing her co-workers that she had volunteered to be laid off, was sent to save face. (*Id.*, Ex. J at 7.) The Court, however, considers the issue of Plaintiff's volunteering to be undisputed because, when it came time to implement the RIF, Defendant could honestly believe that Plaintiff, who had survived annual RIFs going back to 1989 and knew that more RIFs would surely come, had volunteered to be laid off. The Court is unconvinced by Plaintiff's suggestion that Baker, after being instructed to implement a RIF, should have asked Plaintiff if her offer to be laid off still stood. (Pl.'s Statement of Facts at 7.)

The Court also recognizes Baker's admission that he would have retained Matthews and fired Plaintiff even if she had not volunteered, (Pl.'s Statement of Facts, Ex. 2 at 37), although her having volunteered was an "important" factor in the decision. (*Id.* at 36–37.)

13. Nowhere does Plaintiff claim that an opening in another position within the company existed for which she should have been considered. Further, employers who fire employees as part of a work force reduction incur no duty to transfer those employees to other positions within the company. *Earley*, 907 F.2d at 1083.

be a motivating factor in the decision. Baker says he chose Matthews because he was qualified for the position and Plaintiff was not. His conclusion—arrived at, he says, without benefit of taking any notes, any review of personnel files or performance evaluations, or any discussions with either of the supervisors themselves, (*see* Pl.'s Statement of Facts, Ex. 2 at 34 & 38)—is disputable. In particular, his contention that Plaintiff had no experience on the inventory side of the business seems incredible, given that Plaintiff supervised the predecessor company's inventory from 1988 to mid–1991.

But taken alone, the fact that Baker may have been wrong about Plaintiff's qualifications does not make for a dispute sufficient to trigger a jury trial. The Court finds *Isenbergh* [14] instructive on this point:

> [I]n considering whether a plaintiff has presented a jury question on pretext, we have required that the plaintiff point to facts which, if true, would present a basis for the disbelief of the defendant's overall justification. That the plaintiff calls into question some assertions made by the defendant in support of defendant's justification is not enough. The plaintiff must call into question the *veracity of the defendant's ultimate justification* itself.

*Isenbergh*, 97 F.3d at 444 (emphasis added). *See also Brown v. American Honda Motor Co.*, 939 F.2d 946, 954 (11th Cir.1991) (upholding summary judgment where, "[a]lthough the plaintiff has produced scattered pieces of circumstantial evidence, none of it, even taken as a whole, raises sufficient questions to undermine [defendant's] nondiscriminatory rationale"). *But see Howard v. BP Oil Co.*, 32 F.3d 520 (11th Cir.1994) (reversing summary judgment on grounds that fact finder's rejection of defendant's proffered reasons is sufficient circumstantial evidence upon which to base a denial of summary judgment) (viewed with disfavor by *Isenbergh*, 97 F.3d at 442–44).

This, Plaintiff has not done. Even if Baker had reviewed personnel documents and concluded that Plaintiff was qualified for the position, someone—either Plaintiff or Matthews—had to go. [15] Because Baker ultimately could have legitimately made his decision based on Plaintiff's having volunteered to be laid off—i.e., for a nondiscriminatory reason—that rationale is sufficiently insulated, all things considered, from being disbelieved. For Plaintiff, sadly, " 'the essence of a RIF is that competent employees who in more prosperous times would continue and flourish at a company may nevertheless have to be fired.' " *Earley*, 907 F.2d at 1083 (quoting *Healy v. New York Life Insurance Co.*, 860 F.2d 1209, 1220 (3d Cir.1988)).

Accordingly, after a careful review of the record, and the Court being otherwise fully advised, it is

ORDERED and ADJUDGED that Defendant's Motion For Summary Judgment is hereby GRANTED.

---

**14.** The Court notes the discussion in *Isenbergh*—a case involving judgment as a matter of law under Rule 50 of the Federal Rules of Civil Procedure—of the similarities between the standards used for granting a judgment as a matter of law, Fed.R.Civ.P. 50, and a summary judgment, Fed.R.Civ.P. 56. " 'The summary judgment standard mirrors the standard for a directed verdict under the Federal Rule of Civil Procedure 50(a), which is that the trial judge must direct a verdict if, under the governing law, there can be but one reasonable conclusion as to the verdict.' " *Isenbergh*, 97 F.3d at 443 (holding that a court may grant judgment as a matter of law for an employer even where the

court disbelieves the employer's proffered reason for the adverse employment action, provided the employee has failed to affirmatively prove that discrimination motivated the adverse action) (quoting *Earley*, 907 F.2d at 1080).

**15.** Plaintiff has not convinced the Court that Matthews was *un*-qualified for the job. Although Plaintiff had worked for several years as inventory supervisor for the predecessor company, Matthews had worked in that position for Defendant for two years. (Pl.'s Statement of Material Facts at 6 n. 3.)