Kay S. RICHEY, Plaintiff,

v.

CITY OF LILBURN, et al., Defendants.

No. 1:98–CV–0176–RWS.

United States District Court, N.D. Georgia, Atlanta Division.

Sept. 7, 1999.

Steven Eugene Conner, Office of Steven E. Conner, Snellville, GA, Edwin Marger, Office of Edwin Marger, Jasper, GA, Michael J. Puglise, Office of Michael J. Puglise, Snellville, GA, for plaintiff.

John Lewis Sapp, Richard Read Gignilliat, Victor J. Maya, Scott Edward Atwood, Elarbee Thompson & Trapnell, Atlanta, GA, Richard Hyde Jack, Jack & Jack, Athens, GA, for defendants.

## *ORDER*

STORY, District Judge.

This case is before the Court for consideration of the Report and Recommendation [68-1] of Magistrate Judge E. Clayton Scofield, III recommending that Defendants' Motion for Summary Judgment. After carefully considering the Report and Recommendation, the Court receives it with approval and adopts it as the Opinion and Order of this Court.

Accordingly, Defendants' Motion for Summary Judgment [38-1] is hereby **GRANTED**.

**So Ordered.**

## ORDER

SCOFIELD, United States Magistrate Judge.

Attached is the Report and Recommendation of the United States Magistrate Judge in this action in accordance with 28 U.S.C. § 636(b)(1) and this Court's Civil Local Rule 72. The Clerk shall serve this Report and Recommendation on the parties.

Pursuant to 28 U.S.C. § 636(b)(1), within ten (10) days after being served with a copy, each party may file written objections, if any, to the Report and Recommendation. Should objections be filed, they shall specify with particularity the alleged error or errors made (including reference by page number to the transcript if applicable) and shall be served upon the opposing party. The party filing objections will be responsible for obtaining and filing the transcript of any evidentiary hearing for review by the District Court. If no objections are filed, the Report and Recommendation may be adopted as the opinion and order of the District Court and any appellate review of factual findings will be limited to a plain error review. *United States v. Slay,* 714 F.2d 1093 (11th Cir.1983), *cert. denied,* 464 U.S. 1050, 104 S.Ct. 729, 79 L.Ed.2d 189 (1984).

The Clerk is directed to submit the Report and Recommendation with objections, if any, to the District Court after expiration of the above time period.

Should the undersigned's recommendation in this matter be adopted in whole or in part by the District Court, leaving issues to be tried before the undersigned, **IT IS HEREBY ORDERED** that, within thirty (30) days of such disposition by the District Court, the parties shall file their Consolidated Pretrial Order as to all remaining claims.

## REPORT AND RECOMMENDATION BY MAGISTRATE JUDGE IN AN EMPLOYMENT DISCRIMINATION ACTION

Plaintiff commenced this civil action on January 20, 1998, charging that defendants discriminated against her on the basis of (1) sex in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e, *et seq.;* (2) disability in violation of the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12101–12213 ("ADA"); and (3) age in violation of the Age Discrimination in Employment Act of 1967 ("ADEA"), 81 Stat. 602, as amended, 29 U.S.C. §§ 621–634.[1] This matter is presently before the Court on defendants' motion for summary judgment pursuant to Rule 56(b) of the Federal Rules of Civil Procedure on all claims advanced by plaintiff. [Doc. No. 38].[2]

### I.

#### Factual Background

When evaluating the merits of a motion for summary judgment, the Court must

---

1. Defendants point out in their motion that claims for age and disability discrimination are not cognizable under Title VII. This is correct, and defendants would be entitled to summary judgment on such claims if plaintiff was proceeding solely under Title VII. However, although plaintiff has failed to designate the appropriate statute within the text of her third count, the Court finds that plaintiff sufficiently asserts claims under the ADA and ADEA. *See* Amended Compl., [Doc. No. 4], ¶¶ 1, 45–46, 51.

2. Due to noncompliance with the type and page limitations imposed by Local Rules 5.1(B) and 7.1(D), NDGa, defendants filed multiple briefs in connection to this motion. To avoid requiring plaintiff file a new responsive brief, the Court accepted defendants' noncompliant brief into the record. *See* [Doc. No. 65]. For clarity, the Court notes that the briefs by defendants being considered in deciding this motion are the supporting brief located at [Doc. No. 38] and the reply brief located at [Doc. No. 60].

view the evidence and factual inferences in a light most favorable to the non-moving party. *Hairston v. Gainesville Sun Pub. Co.*, 9 F.3d 913, 920 (11th Cir.1993); *Rollins v. TechSouth, Inc.*, 833 F.2d 1525, 1529 (11th Cir.1987). Applying this legal standard, the Court derives the following facts from the parties' statements of fact ("SMF") and the record as a whole:

The City of Lilburn ("City" or "Lilburn") is a municipal corporation duly chartered under Georgia law and located in Gwinnett County. The individually named defendants, Diana Preston, Jack Bolton, H. Michael Donald, and William Barry were all members of the Lilburn City Council at the time of plaintiff's application and initial employment. Defendant Ronald Houck is the City's Director of Public Safety and also serves as the Chief of Police. Defendant Robert Sluder is a sergeant with the Lilburn Police Department ("LPD") and served as plaintiff's immediate supervisor while she worked there. Defendant S. Scott Batterton is Lilburn's duly elected Mayor.

Chapter IV of the City's personnel policies and procedures requires that any vacancy for a full-time position in the City be publicized. The department head in which the vacancy exists is responsible for reviewing all applications received for the vacant position and selects up to five of the applicants for further consideration by the City's Merit System Board. The Merit System Board selects up to three applicants as finalists and the department head chooses one of the finalists for the position. The department head then presents his selection for approval by the Mayor and City Council, who have the final authority on the hiring of permanent employees. (Defs.' SMF ¶ 10).[3]

Plaintiff, a female, was born in 1951. Plaintiff and Sluder had worked together years before at the DeKalb County Police Department. In late May 1997, Sluder approached plaintiff at her place of employment and informed her that there was an opening for a Communications Officer/Jailer (also referred to as "dispatcher") with the City and encouraged her to fill out an application and direct it to his attention. Plaintiff completed an application for a permanent position with the Lilburn PD on June 1, 1997. She was interviewed by Chief Houck on June 4, 1997. During this meeting plaintiff disclosed to Houck that she suffered from multiple sclerosis ("MS") and also that she had been convicted of driving under the influence ("DUI") in April of 1996. (Houck Dec. ¶¶ 9–10; Pl.'s SMF ¶ 17).

Chief Houck viewed plaintiff's prior work experience favorably and initialed her application to be sent on to the Merit Board for consideration. Houck informed plaintiff that he did not believe her DUI conviction or MS would keep her from getting the job. (Defs.' SMF ¶ 17; Houck Dec. ¶¶ 9–10). Prior to the Merit Board review, plaintiff began employment with the City as a dispatcher on June 28, 1997. The parties dispute whether plaintiff was working in a temporary or permanent capacity at that time. (Defs.' SMF ¶ 1; Pl.'s Resp. ¶ 1; Pl.'s Dec. ¶¶ 3–6; Houck Dec. ¶ 13).

When the Merit Board convened on July 17, there were two Communications Officer/Jailer vacancies. The Board ranked plaintiff as one of the top three applicants. Houck selected plaintiff along with another female, Cinderella Castro, to recommend to the Mayor and City Council for the positions.[4] Plaintiff learned of her selection that very same day.

---

**3.** Plaintiff admits that this procedure is outlined in the City's policies and procedures manual but disputes that it was actually followed in practice. Plaintiff asserts that Chief Houck's initials on an application indicated that the individual had been hired; however, she has pointed to no evidence other than her own testimony to support this contention. (Pl.'s Resp. ¶ 10; Pl.'s Dep. 105, 114, 116).

**4.** As discussed in footnote 3, *supra*, plaintiff contends that approval from the Mayor and City Council was not required and that

At the meeting to discuss the agenda for the City Council meeting scheduled for August 11, 1997, Mayor Batterton informed Houck that he had learned of plaintiff's DUI conviction and that he would not support her application for employment. (Defs.' SMF ¶ 25; Batterton Dec. ¶ 6; Houck Dec. ¶ 18). The Mayor and City Council agreed during the August 11 work session that approving plaintiff would be against City public policy. *See* (Defs.' Exs. 3–8: Cole Dec. ¶ 7; Preston Dec. ¶ 5; Barry Dec. ¶ 5; Donald Dec. ¶ 5; Batterton Dec. ¶ 6–8; Bolton Dec. ¶ 5). On August 14 Houck was informed by the Mayor and City Council that they had decided not to approve plaintiff for employment. Houck spoke with plaintiff via telephone on August 15 and informed her that the Mayor and City Council would not approve her for employment due to her DUI conviction. (Houck Dec. ¶¶ 20–21; Defs.' SMF ¶ 28). Plaintiff's last day of employment with the City was August 14, 1997.

Plaintiff filed a charge of sex discrimination with the Equal Employment Opportunity Commission ("EEOC") on August 28, 1997. At plaintiff's request, the EEOC issued plaintiff a right to sue notice on October 21, 1997. (Pl.'s Am.Compl., Ex. C). On December 27, 1997, the City filled the position left vacant by plaintiff's rejection with Carmen Ivan, a female. (Defs.' SMF ¶ 30).

## II.

### *The Standard of Review on Summary Judgment*

Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Rule 56(c), Fed. R.Civ.P.; *Turlington v. Atlanta Gas Light Co.*, 135 F.3d 1428, 1432 (11th Cir.1998). A factual dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *United*

*States v. Four Parcels of Real Property*, 941 F.2d 1428, 1437 (11th Cir.1991) (en banc) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). The substantive law applicable to the case determines which facts are material. *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505.

The moving party bears the initial burden of showing the court "the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Four Parcels*, 941 F.2d at 1437 (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). If the moving party fails to discharge this initial burden, then the motion must be denied. *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1116 (11th Cir.1993) (citing *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir.1991)).

When the non-moving party has the burden of proof at trial, the moving party may discharge its initial burden by "showing ... the district court ... that there is an absence of evidence to support the non-moving party's case." *Celotex*, 477 U.S. at 325, 106 S.Ct. 2548 (internal quotes omitted); *accord Four Parcels*, 941 F.2d at 1437–38. Once this burden is met, the non-moving party must then "go beyond the pleadings and ... designate specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324, 106 S.Ct. 2548 (citing Fed.R.Civ.P. 56(e)).

## III.

### *Discussion*

#### A. *Individually Named Defendants*

Plaintiff has named Ronald Houck, Robert Sluder, S. Scott Batterton, Diana Preston, Jack Bolton, H. Michael Donald, and William Barry in their individual and offi-

---

Houck's initials signified her hiring as a per-

manent employee. (Pl.'s Resp. ¶ 21).

cial capacities as defendants. Defendants argue that none of the three statutes, Title VII, ADA, or ADEA, allow for suits against individuals. Plaintiff asserts that *Smith v. Lomax,* 45 F.3d 402 (11th Cir. 1995), holds to the contrary and permits her suit against the individuals.

An official-capacity suit against a state officer is not a suit against the official but rather is a suit against the official's office. *Hafer v. Melo,* 502 U.S. 21, 26, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991) (quoting *Will v. Michigan Dept. of State Police,* 491 U.S. 58, 71, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989)). "State officers sued for damages in their official capacity are not 'persons' for the purposes of the suit because they assume the identity of the government that employs them." *Id.* at 27, 112 S.Ct. 358.

Although certain civil rights actions may, in some limited circumstances, be maintained against state actors individually,[5] it is well settled in this circuit that actions under Title VII, the ADA and the ADEA may only be maintained against the employer itself. *Smith v. Lomax,* 45 F.3d at 403 n. 4 (holding that the individually named defendants could not be considered plaintiff's employer and, therefore, could not be held liable under the ADEA or Title VII); *Busby v. City of Orlando,* 931 F.2d 764, 772 (11th Cir.1991) ("The relief granted under Title VII is against the employer, not individual employees whose actions would constitute a violation of the Act."); *Cross v. Alabama,* 49 F.3d 1490, 1504 (11th Cir.1995) (citing *Busby* and holding that Title VII suits may not be maintained against persons individually); *Mason v.*

*Stallings,* 82 F.3d 1007, 1009 (11th Cir. 1996) (citing *Smith* and *Busby* and holding that the ADA "does not provide for individual liability, only employer liability").

Plaintiff has presented no legal authority to counter defendants' arguments or to otherwise persuade this Court that the individual defendants may be held liable under any of the three statutes involved in this case.[6] Plaintiff has named the actual employer by naming the City; thus, the naming of the individuals is unnecessary, inappropriate, and not authorized by the applicable law. Accordingly, summary judgment should be GRANTED as to each of the individual defendants.[7]

## B. *Plaintiff's Age Discrimination Claim*

Defendant contends that summary judgment is appropriate on plaintiff's ADEA claim because plaintiff failed to file a charge of age discrimination with the EEOC as required by 29 U.S.C. § 626(d). Plaintiff admits that she did not file an age discrimination charge, but asserts that she fulfilled the statutory requirement by filing a charge of sex discrimination under Title VII. Plaintiff asserts that the age discrimination statute does not require that the charge mandated by § 636(d) allege age discrimination. Plaintiff cites no legal authority to support her argument.

The applicable language of the ADEA plainly states: "No civil action may be commenced by an individual *under this section* until 60 days after a charge alleging unlawful discrimination has been filed with the [EEOC]." 29 U.S.C. § 626(d) (emphasis added). Section 626(b) states in pertinent part: "The provisions of this

---

5. For example, a plaintiff may maintain actions against individuals when presenting constitutional claims via 42 U.S.C. § 1983. *See, e.g., Smith,* 45 F.3d at 406–408; *see generally Hafer v. Melo,* 502 U.S. 21, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991); *Will v. Michigan Dept. of State Police,* 491 U.S. 58, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989); *Brandon v. Holt,* 469 U.S. 464, 105 S.Ct. 873, 83 L.Ed.2d 878 (1985).

6. Plaintiff has misinterpreted the *Smith* Court's discussion of individual liability for equal protection violations under 42 U.S.C. § 1983 as applying to individual liability under Title VII and the ADA. *See Smith,* 45 F.3d at 403 n. 4.

7. Accordingly, the ensuing analysis shall address the claims against the only remaining defendant, the City of Lilburn.

chapter shall be enforced in accordance with the powers, remedies, and procedures provided in sections 211(b), 216 (except for subsection (a) thereof), and 217 of this title and subsection (c) of this section." No reference whatsoever is made to Title VII or the requirements of 42 U.S.C.2000e–5.[8]

Although § 636(d) does not expressly state that an age discrimination charge must be filed as a precondition to a civil action, this Court cannot agree with plaintiff that filing a charge of sex discrimination pursuant to 42 U.S.C. § 2000e–5 is sufficient to satisfy the requirements under the age discrimination statute, 29 U.S.C. § 636(d). The clear implication of the statute is that a claimant must file a claim of age discrimination, or at least file a claim that factually suggests an age claim. Plaintiff failed to do so in this case.[9]

Plaintiff also asserts that she did not learn of the age discrimination claim "until after the EEOC complaint was filed and Plaintiff was preparing to submit the Complaint in the present action." (Pl.'s Br. at 9). However, this does not excuse plaintiff from fulfilling the statutory requirement. Plaintiff included the age claim in the complaint filed in this court in January of 1998, but provided no explanation for her failure to amend her existing EEOC complaint.

Plaintiff next asserts that defendant waived any argument on this exhaustion issue by failing to file a motion to dismiss or otherwise object to the age claim. Defendant responds that it raised the issue as an affirmative defense in its answer and addressed it in its mandatory disclosures.

Filing a timely EEOC charge "is not a jurisdictional prerequisite to suit in federal court, but a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling." *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393, 102 S.Ct. 1127, 71 L.Ed.2d 234 (1982). A plaintiff must generally allege in the complaint that all conditions precedent have been fulfilled. If the defendant disagrees with plaintiff's allegation, "a denial of performance or occurrence shall be made specifically and with particularity." Fed.R.Civ.P. 9(c); *Jackson v. Seaboard Coast Line R.R.*, 678 F.2d 992, 1010 (11th Cir.1982). Plaintiff then bears the burden of proving that the condition precedent joined in issue by defendant has been satisfied. *Jackson*, 678 F.2d at 1010.

The first defense listed by defendants in their answer to plaintiff's first amended complaint states: "Plaintiff's claims are barred in whole or in part by her failure to comply with all conditions precedent and/or all statutory prerequisites to suit." [Doc. No. 9]. In addition, defendants also denied in specific terms plaintiff's allegation in paragraph twelve of the complaint that all conditions precedent had been satisfied. (Def.'s Answer to First Amended Compl. ¶ 12 at [Doc. No. 9] ). Furthermore, defendant specifically addressed the issue in its mandatory disclosures when discussing its first defense. (Defs.' Resp. No. 3, part (a) at [Doc. No. 11] ). Therefore, the Court concludes that defendant sufficiently asserted plaintiff's failure to satisfy the conditions precedent to filing

---

**8.** Compare 29 U.S.C. § 626(b) with the ADA, 42 U.S.C. § 12117, which relies specifically on "[t]he powers, remedies, and procedures set forth in sections 2000e–4, 2000e–5, 2000e–6, 2000e–8, and 2000e–9" of Title VII as the enforcement procedures to be followed in ADA cases.

**9.** In so finding, the Court has considered the rule in this circuit that it is the factual statement of the EEOC charge, not "the selection of the type of discrimination alleged" that is crucial. *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 462 (5th Cir.1970). Plaintiff's affidavit attached to her EEOC charge states in pertinent part: "I believe that I was discharged because of my sex, female, in that there are male employees who are police officers [who] were discharged from their former positions for sexual harassment, yet was [sic] hired by Respondent." This statement presents a factual allegation that male employees were afforded more lenient treatment than female employees. Nothing therein suggests or could be construed as an age discrimination claim.

suit under the ADEA and that no waiver occurred.

Accordingly, because plaintiff failed to file an EEOC charge of age discrimination as required and defendant did not waive the defense, it is recommended that summary judgment be GRANTED to defendant on plaintiff's claim under the ADEA.

## C. *Plaintiff's Title VII Claim of Sex Discrimination*

■ Title VII makes it unlawful for an employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1). In an employment discrimination disparate treatment action, plaintiff has the burden of persuading the factfinder that the defendant intentionally discriminated against her. *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 252–53, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). When, as in this case, direct evidence of discriminatory intent is not available,[10] a plaintiff may present circumstantial evidence from which an inference of intentional discrimination may be drawn. *Armstrong v. Flowers Hospital,* 33 F.3d 1308, 1313 (11th Cir.1994).

When relying upon circumstantial evidence, the allocation of burdens and order of presentation and proof are as follows: (1) the plaintiff has the burden of establishing a prima facie case of discrimination; (2) once the plaintiff establishes a prima facie case, the burden shifts to the defendant to articulate a legitimate, non-discriminatory reason for the action taken against the employee; and (3) if defendant carries this burden, plaintiff must be given an opportunity to show that the legitimate reason offered by defendant was a pretext for discrimination. *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802–04, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).

The basic framework to for establishing a prima facie case was set out by *McDonnell Douglas* and has been adapted by the courts to fit varying factual situations that arise. *See McDonnell Douglas,* 411 U.S. at 802, n. 13, 93 S.Ct. 1817 (explaining that the test is a flexible guide and is "not necessarily applicable in every respect in differing factual situations"); *Furnco Construction Corp. v. Waters,* 438 U.S. 567, 575–76, 98 S.Ct. 2943, 57 L.Ed.2d 957 (1978) (reiterating *McDonnell Douglas* that "the facts necessarily will vary in Title VII cases, and the specification of the prima facie proof required" will also vary); *Schoenfeld v. Babbitt,* 168 F.3d 1257, 1268 (11th Cir.1999) ("the requisite showings that make up a prima facie case are not meant to be rigid or inflexible"). Generally, a plaintiff need only show that "she applied for an available position for which she was qualified but was rejected under circumstances that give rise to an inference of unlawful discrimination." *Burdine,* 450 U.S. at 253, 101 S.Ct. 1089; *accord Schoenfeld,* 168 F.3d at 1268.

### 1. The Prima Facie Test Applied in Failure to Hire Cases

■ In a failure to hire or wrongful termination situation, a plaintiff may establish a prima facie case by showing (1) she belonged to a protected group; (2) she was qualified and applied for the position; (3) that despite her qualifications she was rejected and/or discharged; and (4) after the rejection the employer filled the position with someone outside of plaintiff's protected class, or the position remained open and the employer continued to seek applications from persons with plaintiff's qualifications. *McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. 1817; *Schoenfeld,* 168 F.3d at 1267; *cf. Perryman v. Johnson Products Co.,* 698 F.2d 1138, 1142 (11th Cir.1983) (stating slightly modified test for a termination case).

Defendant contends that plaintiff cannot show she was qualified for the job or that

**10.** Plaintiff has not argued that her claims are supported by direct evidence in this case.

she was replaced by a male. Defendant discusses at great length the meaning of "qualified" under the ADA and cites *Burciaga v. West*, 996 F.Supp. 628 (W.D.Tex. 1998), for the proposition that when an employee is found to be not qualified for the position under the Rehabilitation Act, she is similarly unqualified under Title VII. Defendant asserts that although plaintiff appeared to be qualified at the time of her selection by Houck, during discovery the City learned that plaintiff's MS was accompanied by certain very serious symptoms, including seizures, that the City contends would disqualify her for the position of dispatcher.

Plaintiff argues that she was qualified, demonstrated by her prior experience, State certification, and the fact that she performed the job for a number of weeks while waiting for final approval from the Mayor and City Council. Plaintiff further asserts that after her termination the City continued to seek applications and at the same time employed Jason Deyette, a male, in the position of communications officer.

■ This Court could find no binding authority in this Circuit addressing whether after-acquired evidence regarding a plaintiff's disability could be used by a defendant to defeat plaintiff's prima facie showing of qualification in the Title VII context. Generally, in the context of a Title VII prima facie analysis, "qualified" refers to basic qualifications rather than optimal performance. *See, e.g., Carter v. Three Springs Residential Treatment*, 132 F.3d 635, 643–44 (11th Cir.1998) (discussing that a plaintiff must show he was minimally qualified for the position); *East-*

land v. Tennessee Valley Authority, 704 F.2d 613, 625 (11th Cir.1983); *Louis v. Encore Computer Corp.*, 949 F.Supp. 836, 840 (S.D.Fla.1996). The Court finds that it is not, however, necessary to resolve this issue because even if a question of fact remains as to plaintiff's qualifications, she is nonetheless unable to make out a prima facie case of sex discrimination.

■ The record shows that Deyette, the male officer plaintiff claims "replaced" her, was already retained by they City as a reserve officer at the time plaintiff began working as a dispatcher. Deyette served as a dispatcher on a temporary basis during the same time period that plaintiff was also serving in that capacity. (Pl.'s Br. at 3–4, 23; Houck Dec. ¶¶ 13, 22). The City later moved Deyette out of the communications department and hired him as a full-time police officer. Therefore, Deyette did not replace plaintiff when she was discharged.[11]

The City eventually filled the vacancy resulting from plaintiff's rejection with another female, Carmen Ivan.[12] Thus, since the position plaintiff sought was filled by another female, she is unable to show that she was replaced by an individual outside of her protected class. Therefore, plaintiff has failed to establish a prima facie case. *See Schoenfeld*, 168 F.3d at 1267.

The Title VII analysis ends when the Court concludes that plaintiff is unable to establish a prima facie case. *Nix v. WLCY Radio/Rahall Communications*, 738 F.2d 1181, 1187 (11th Cir.1984).

### 2. Plaintiff's Comparative Evidence

Plaintiff has also presented evidence comparing herself to several other City

---

11. Plaintiff also overlooks the fact that at the time she was selected by Houck and the Merit Board, another female, Cinderella Castro, was also selected. Although they rejected plaintiff, the Mayor and City Council approved Castro's appointment.

12. Plaintiff admits that the City hired Ivan to fill the vacant position but contends that this hiring is immaterial because it occurred sev-

eral months after plaintiff's termination. (Pl.'s Br. at 18–19). However, it is undisputed that the City was actively searching for a qualified applicant both before plaintiff was rejected as well as after. (Defs.' SMF ¶ 30; Houck Dec. ¶¶ 8, 22). This lapse of time does not alter the fact that plaintiff was not replaced by someone outside her protected class.

employees. Although presented primarily in connection with her efforts to show pretext, plaintiff also alleges that this evidence demonstrates prima facie disparate treatment—that the City treats male employees more favorably than females. Comparative evidence of this nature is most often utilized in disparate discipline/work-rule violation cases where the plaintiff may establish a prima facie case by showing (1) she is a member of a protected class; (2) she was subjected to an adverse employment action; (3) the employer treated similarly situated male employees more favorably; and (4) she was qualified to do the job. *Maniccia v. Brown,* 171 F.3d 1364, 1368 (11th Cir. 1999); *Holifield v. Reno,* 115 F.3d 1555, 1562 (11th Cir.1997). Although not an exact fit, plaintiff's situation resembles a discipline case in certain respects.[13]

Plaintiff has presented seven individuals whom she contends were similarly situated but treated more favorably than she: Chris Matthews; Rick Holmes; Ben Chitwood; Jason Deyette, Doug Beckner; Theresa Stults; and Kathy Parker. Matthews had pleaded nolo contendere to a fleeing and alluding charge in 1990, seven years prior to becoming a permanent employee of the City. Matthews had also served as a volunteer officer for two years prior to being offered a permanent position. Holmes was accused by a female employee of sexual harassment twelve years earlier while employed at another police department. No action was taken against Holmes and he chose to resign from that department and was later hired into the LPD. Chitwood had also been accused of sexual harassment at a previous place of employment and chose to resign rather than expose his family to the ordeal of a public investigation. Deyette had lost money under his supervision as a volunteer officer/jailer; however the money was returned a few days later by an individual stating it had been stapled to a document he had received from the jail.

 The conduct of Matthews, Holmes, Chitwood, and Deyette is substantially distinguishable from plaintiff and was not alcohol-related; thus, these individuals are not appropriate comparators. None of these cases was "the same or similar" or involved conduct "nearly identical" to plaintiff's case. *See Jones v. Bessemer Carraway Med. Ctr.,* 137 F.3d 1306, 1311, *modified,* 151 F.3d 1321 (11th Cir. 1998) ("In determining whether employees are similarly situated for purposes of establishing a prima facie case, it is necessary to consider whether the employees are involved in or accused of the same or similar conduct") (quoting *Holifield,* 115 F.3d at 1562); *Jones v. Gerwens,* 874 F.2d 1534, 1539–40 (11th Cir.1989) (stating the most important factors "in the disciplinary context . . . are the nature of the offenses committed and the nature of the punishment imposed"); *Maniccia,* 171 F.3d at 1368 ("We require that the quantity and quality of the comparator's misconduct be nearly identical to prevent courts from second-guessing employers' reasonable decisions and confusing apples with oranges"). The three remaining individuals—Beckner, Stults, and Parker—engaged in conduct involving alcohol, but only Beckner was like plaintiff in having been convicted of driving under the influence. Stults and Parker, who had alcohol-related problems, are women. Therefore, the fact that they were retained in their positions provides no support for plaintiff's claims of sex discrimination.[14] Beckner began working for the City's streets department in 1990, and at the time of his deposition he had been a maintenance supervisor for six years. (Pl.'s Ex. L—Beckner Dep. at 6–7; Houck Dec.

---

13. Also, under *Burdine,* such comparative evidence may be used to show "circumstances that give rise to an inference of unlawful discrimination." *Burdine,* 450 U.S. at 253, 101 S.Ct. 1089

14. Plaintiff intended to use the two women as comparators for her ADEA claim; however, the Court has disposed of that claim as procedurally barred.

¶ 37). Beckner was convicted of a DUI sometime between 1996 and 1997. (Pl.'s Ex. L—Beckner Dep. at 7; Houck Dec. ¶ 38). Beckner was counseled but was not discharged or otherwise disciplined for the DUI conviction. (Houck Dec. ¶ 38).

 In order to show disparate treatment, plaintiff must show that she is similarly situated to the comparative employees in "all relevant respects." *Holifield,* 115 F.3d at 1562 (citing *Smith v. Stratus Computer, Inc.,* 40 F.3d 11, 17 (1st Cir.1994)); *Bessemer Carraway,* 137 F.3d at 1311; *Malladi v. Brown,* 987 F.Supp. 893 (M.D.Ala.1997), *aff'd sub nom, United States v. Ponder,* 150 F.3d 1197 (11th Cir. 1998) (unpublished table decision). Although Houck was his supervisor, Beckner did not work for the police department.[15] Furthermore, Houck handled the discipline of Beckner and the issue was never presented to nor addressed by the Mayor, as in plaintiff's case. In addition, Beckner had been a permanent employee for at least six years at the time of his DUI conviction. As a permanent employee for the City, Beckner possessed a property interest in his job and could not be dismissed without being afforded certain procedural safeguards.[16] *See Peterson v. Atlanta Hous. Auth.,* 998 F.2d 904, 913–14 (11th Cir.1993) ("Under Georgia law a public employee has a property interest in her job whenever she may only be dismissed for cause.") (citing *Brownlee v. Williams,* 233 Ga. 548, 212 S.E.2d 359, 362 (1975)).

By comparison, plaintiff was not yet classified as a permanent employee; she had no history of employment with the City; and the position she sought was with the police department, not the streets department. The City could legitimately draw a distinction between police department employees and streets department employees as to the effect on continued employment to be given to a DUI conviction. In addition, as a temporary employee, plaintiff did not possess a property interest in her employment and was not entitled to the due process safeguards that Beckner was. Furthermore, the decision to deny her a permanent position was made by the Mayor and City Council, not Houck.[17] Taking all these distinguishing circumstances into consideration, the Court finds that Beckner is not an appropriate comparator.

Having failed to advance an appropriate comparator, plaintiff has accordingly failed to demonstrate that she was treated less favorably than any similarly situated male employee; therefore, she is unable to establish a prima facie case under a disparate discipline test.[18] *See Holifield,* 115 F.3d at 1563.

**3. Conclusions as to Title VII**

In this case, the Court has analyzed plaintiff's allegations and evidence under two prima facie tests and has concluded that she is unable to satisfy either. Accordingly, it is recommended that summary judgment be GRANTED to defendant as to plaintiff's Title VII claim.[19]

---

**15.** Houck, in his capacity as Public Safety Director, supervised the streets department and, therefore, also supervised Beckner. (Houck Dec. ¶ 37).

**16.** Section 7–5 of the City's personnel policies and procedures conveys this entitlement to permanent employees. *See* (Houck Dec. Att. C, at 29–30).

**17.** In fact, as discussed earlier, Houck desired to keep plaintiff on permanently and would have done so if the decision had been left to him. (Houck Dec. ¶¶ 9–10, 18).

**18.** As plaintiff failed to establish the third prong of the enunciated test, the Court need not reach the qualification element in this analysis.

**19.** Even if the Court were to assume plaintiff could establish a prima facie case, summary judgment would still be appropriate because the defendants presented a legitimate non-discriminatory reason for its action, namely, the City policy regarding DUI convictions, and plaintiff has failed to demonstrate pretext. *See Combs v. Plantation Patterns,* 106 F.3d 1519, 1531, 1538 (11th Cir.1997) (citations omitted). However, it is not necessary to reach this issue on the record presented

### D. *Plaintiffs' ADA Claim*

 The ADA prohibits covered employers from discriminating based upon the known physical or mental impairments of a qualified individual with a disability. 42 U.S.C. § 12112. To state a prima facie case of disability discrimination, plaintiff must show (1) that she has a disability; (2) that she is qualified to serve in the position, with or without reasonable accommodations, and (3) that she was subjected to unlawful discrimination because of the disability. *Holbrook v. City of Alpharetta,* 112 F.3d 1522, 1526 (11th Cir.1997); *Morisky v. Broward County,* 80 F.3d 445, 447 (11th Cir.1996).

Defendant argues that plaintiff cannot show she was qualified or that she was denied employment because of her disability.[20] Defendant contends that plaintiff is not qualified to perform the essential functions of the job because she suffers from a type of reoccurring seizure known as a trans-ischemic attack ("TIA"). Plaintiff testified in her deposition that these attacks occur weekly and at random times. (Pl.'s Dep. 95). During these seizures, plaintiff is unable to function for a period of thirty seconds to three minutes. Defendant asserts that the dispatcher must be able to react quickly and calmly in emergency situations and the fact that plaintiff may suffer a TIA during an emergency call puts the safety of the public and other police officers at risk.

Plaintiff claims that she is qualified to perform the job, demonstrated by her performance on the job without incident for approximately six weeks while she was awaiting final approval from the Mayor and City Council. Plaintiff also points to the letter of recommendation she received from the Chief of Police for DeKalb County, Robert Burgess, stating she was qualified for the position. Plaintiff further contends that defendant's assertion that she is not qualified reveals that the reason given for her rejection, the DUI conviction, was pretextual.

At the time plaintiff was selected by Houck, he knew of her disability and "did not believe it would disqualify her" for the position. (Houck Dec. ¶ 10). Defendant now asserts, based on information learned during discovery, that plaintiff is not, and was not, qualified for the position. Contrary to plaintiff's contention, the Court does not find defendant's arguments to be inconsistent or contradictory. Defendant has consistently maintained that plaintiff's DUI conviction was the sole reason for plaintiff's rejection when her application went before the City Council. Whether or not plaintiff can satisfy the qualification prong of a prima facie case of disability discrimination is a separate and distinct threshold issue.

To be considered a "qualified individual with a disability," the plaintiff must show that she is able, with or without reasonable accommodation, to perform the essential functions of the position. *Talavera v. School Bd. of Palm Beach County,* 129 F.3d 1214, 1217 (11th Cir.1997); *LaChance v. Duffy's Draft House,* 146 F.3d 832, 836 (11th Cir.1998); 42 U.S.C. § 12111(8). "Consideration shall be given to the employer's judgment as to what functions of a job are essential, and if an employer has prepared a written description before advertising or interviewing applicants ..., this description shall be considered evidence of the essential functions of the job."

---

here, due to the failure of plaintiff to make out the prima facie case.

**20.** Defendant concedes that plaintiff has a disability. *See* (Defs' Br. at 14—"Plaintiff went to considerable lengths in her deposition to establish that she is disabled.") The Court notes that multiple sclerosis is included in the commentary to the regulations as an example of a disorder constituting a physical impair-

ment. *See* 29 C.F.R. Pt. 1630, App. § 1630.2(h) (1998). Therefore, as defendant did not argue otherwise, the Court will proceed under the assumption that plaintiff can establish the first prong of her prima facie case. *See Moritz v. Frontier Airlines, Inc.,* 147 F.3d 784, 786 (8th Cir.1998) (assuming MS to be disability).

42 U.S.C. § 12111(8). The regulations identify three factors that may be considered to determine if a particular task is essential: (1) the reason the position exists is to perform the function; (2) there are a limited number of employees available among whom the performance of the job function can be distributed; and (3) the function is highly specialized so that the incumbent in the position was hired for his or her expertise or ability to perform the particular function. 29 C.F.R. § 1630.2(n)(2)(i)–(iii); *Holbrook*, 112 F.3d at 1526.

The general statement for the communications officer/jailer position provides in pertinent part: "The Communications Officer operates a two-way radio and other equipment in the receipt and transmission of police calls to the proper police vehicles and personnel. The Dispatcher is a full-time Jail Officer.... [T]he employee is expected to exercise independent and sound judgement in handling emergency situations." The job description also lists many duties and needed abilities, including the following: "ability to act calmly and with accuracy in an emergency; ability to speak clearly and concisely; performs the duties of a Jail Officer with knowledge in emergency procedures, inmate rights, inmate discipline, medical and food service practices, inmate supervision, and key and tool control; monitors City, State and County radios; determines exact location of situation and dispatches police officers; monitors alarm board." (Houck Dec. Attach. D).

■ The Court finds that defendant's argument, that plaintiff is not a "qualified individual with a disability," is well taken. The essential functions required of a dispatcher include being able to respond quickly and calmly and to communicate clearly in emergency situations. The ADA provides that an employer may use selec-

tion criteria that tend to screen out or adversely affect an individual with a disability if the criteria are "shown to be job-related and consistent with business necessity." 42 U.S.C. § 12113(a). "The term 'qualification standards' may include a requirement that an individual shall not pose a direct threat to the health or safety of other individuals in the workplace." 42 U.S.C. § 12113(b). Although plaintiff may be fully capable of performing her duties most of the time, her inability to react or communicate coherently during a TIA poses a direct threat to police officers and to the general public seeking emergency assistance through the 911 service.[21] *See* 29 C.F.R. § 1630.2(r).

A plaintiff can overcome the "direct threat" defense by showing that a reasonable accommodation would alleviate the risk. 42 U.S.C. § 12113(a); *Moses v. American Nonwovens, Inc.*, 97 F.3d 446, 447 (11th Cir.1996). The burden is on the plaintiff to prove that she does not pose a direct threat or that reasonable accommodations were available. *LaChance*, 146 F.3d at 836; *Willis v. Conopco, Inc.*, 108 F.3d 282, 285–86 (11th Cir.1997); *Moses*, 97 F.3d at 447. The Eleventh Circuit in *LaChance* elaborated on the meaning of reasonable accommodation:

> The ADA requires employers to provide reasonable accommodations for known disabilities unless that accommodation would result in undue hardship for the employer. An "accommodation" is "reasonable"—and, therefore, required under the ADA—only if it enables the employee to perform the essential function of the job. The ADA defines "essential functions" to be the fundamental job duties of the employment position, as differentiated from "marginal" functions. The employee must actually perform the function the employer asserts is essential.

**21.** Plaintiff acknowledged the importance of the duties: "The radio traffic is number one, because I am the only lifeline to that person, to get them help.... [The position] is so im-

portant. because if I don't know where an officer is and he gets shot—it just speaks for itself." (Pl.'s Dep. at 117).

*LaChance,* 146 F.3d at 835 (footnotes omitted) (citing 42 U.S.C. § 12112(a)); *Morisky,* 80 F.3d at 447; 29 C.F.R. §§ 1630.2(m), 1630.2(n), 1630.2(o)(2)(ii).

Plaintiff asserts that any potential danger created by her inability to respond during a TIA could be minimized by scheduling her to work on a shift with another communications officer. Defendant argues that this proposed accommodation is unreasonable because, as plaintiff admitted, only one communications officer works per shift and at the time plaintiff began working the police department was already short two communications officers. *See* (Defs.' SMF ¶ 34). In addition, the dispatcher is the only person whose work station is in the radio room and the only way to view this work station is through the glass window in the police department lobby or by actually being in the radio room. (Defs.' SMF ¶ 34). Thus, there would be no means to keep a watchful eye on plaintiff to ensure that she did not suffer a TIA while taking a call, except, in effect, by hiring a back-up to sit in the room with plaintiff.

In this case, the essential functions required of a dispatcher include being alert and able to respond quickly and calmly in emergency situations. The incidence of her TIA poses a direct threat to plaintiff's ability to perform these essential functions of the job. Plaintiff failed to present a reasonable accommodation that would allow her to perform the essential functions of the job even while having a TIA. *See Stewart v. Happy Herman's Cheshire Bridge, Inc.,* 117 F.3d 1278, 1286 (11th Cir.1997) ("the burden of identifying an accommodation that would allow a qualified individual to perform the job rests with that individual, as does the ultimate burden of persuasion with respect to demonstrating that such an accommodation is reasonable."); *Conopco,* 108 F.3d at 286–87 (discussing that plaintiff must first present evidence that the accommodation is reasonable before defendant will be required to demonstrate undue burden).

Requiring the employer to have a back-up dispatcher to watch over plaintiff is not a reasonable accommodation to impose on the employer.

The accommodation contemplated in *Holbrook* —but found not to be required— is analogous to this case. Holbrook was a skilled police detective but his disability, visual problems caused by diabetes, prevented him from driving and collecting certain types of evidence at crime scenes. Although the police department had accommodated Holbrook by having another officer drive him and assist him at certain crime scenes, and although the types of criminal investigations that Holbrook could not perform alone occurred infrequently, the court held that the police department was not required to accommodate Holbrook because the accommodation would not actually enable Holbrook to perform the essential functions of the job. *Holbrook,* 112 F.3d at 1528. Accordingly, applying the rationale of *Holbrook,* this Court concludes that plaintiff is unable to satisfy the second element of the prima facie test by showing that she is qualified to serve in the position, with or without reasonable accommodations.

As plaintiff is unable to establish the qualification element of her prima facie case, the analysis need go no further; however, the Court notes that it appears plaintiff is also unable to demonstrate that she was rejected for employment "because of" her disability. The City Council members filed declarations stating that they had no knowledge of plaintiff's disability at the time they decided against approving her application. *See* (Cole Dec. ¶ 7; Preston Dec. ¶ 5–6; Barry Dec. ¶ 5–6; Donald Dec. ¶ 5–6; Bolton Dec. ¶ 5). Plaintiff presented no evidence to indicate otherwise but instead contends that knowledge of her disability should be imputed to the Council members because Houck and the Merit Board were aware of her condition. This Circuit rejected such an argument in *Morisky* when it quoted *Hedberg v. Indiana Bell Tel. Co.,* 47 F.3d 928, 932 (7th Cir.

1995), with approval: "an employer cannot fire an employee 'because of' a disability unless it knows of the disability." *Morisky*, 80 F.3d at 448 (discussing and indicating agreement with the *Hedberg* Court's holding that knowledge of the company's physician would not be imputed to the decision-maker).

Accordingly, as plaintiff has failed to demonstrate her ability to establish a prima facie case of disability discrimination, it is recommended that summary judgment be GRANTED as to this claim.

### IV.

#### *Summary and Conclusion*

In summary, it is recommended that defendants' motion for summary judgment be **GRANTED** as to each of plaintiff's claims.