45 F.3d 402
 67 Fair Empl.Prac.Cas. (BNA) 1005,
66 Empl. Prac. Dec. P 43,456
Alice H. SMITH, Plaintiff-Appellee,
v.
Michael LOMAX, Individually and in his Official Capacity as
Chairman of the Fulton County Board of Commissioners; and
Michael Hightower, Individually and in his Official Capacity
as Commissioner of Fulton County, Defendants-Appellants.
 No. 93-8062.
 United States Court of Appeals,
Eleventh Circuit.
 Feb. 22, 1995.
 
 Susan Barker Forsling, Paula A. Morgan, Susan M. Hartwig, Viviane M. Haight, Office of Fulton County Atty., Atlanta, GA, for appellants.
 Allan Leroy Parks, Jr., Theresa L. Kitay, Harlan Stuart Miller, III, Kirwan Goger Chesin & Parks, Atlanta, GA, for appellee.
 Appeal from the United States District Court for the Northern District of Georgia.
 Before TJOFLAT, Chief Judge, KRAVITCH, Circuit Judge, and CLARK, Senior Circuit Judge.
 TJOFLAT, Chief Judge:
 
 I.
 
 1
 On October 25, 1989, at the conclusion of her six-year term, the Board of Commissioners of Fulton County, Georgia voted to replace its white female clerk, Alice Smith, with an African-American female, Avarita Hanson.[1] Two African-American members of the Board, Chairman Michael Lomax and Commissioner Michael Hightower, who cast the deciding votes, voted not to reappoint Smith and to appoint Hanson allegedly on account of race.[2] Having been denied reappointment, Smith brought this suit against Lomax and Hightower and Fulton County seeking reappointment as Board clerk, back pay, and compensatory and punitive damages under various antidiscrimination provisions of federal law.
 
 
 2
 Count one of Smith's complaint,[3] which is brought under 42 U.S.C. Sec. 1983 (1988), demands such relief (1) against Lomax and Hightower, in their individual capacities, on the ground that their action denied Smith equal protection of the laws under the Fourteenth Amendment, and (2) against Fulton County, on the ground that the County is responsible for the two commissioners' action. Count one seeks the same relief under 42 U.S.C. Sec. 1981 (1988). Counts two and three of the complaint seek the same relief against Fulton County under the Age Discrimination in Employment Act, 29 U.S.C. Secs. 621-634 (1988 & Supp. II 1990) (the "ADEA"), and under Title VII of the Civil Rights Act of 1964, 42 U.S.C. Secs. 2000e to 2000e-17 (1988).[4]
 
 
 3
 After the parties joined issue and engaged in considerable discovery, the defendants moved for summary judgment, contending that Smith's proof failed to establish a case on any of her claims. Lomax and Hightower, in their individual capacities, alternatively contended that they are entitled to both legislative and qualified immunity on Smith's section 1983 claim alleging an Equal Protection Clause violation.[5] The district court summarily denied the defendants' motions. Lomax and Hightower now appeal the district court's refusal to grant them either legislative or qualified immunity.[6] We affirm.
 
 II.
 
 4
 In their brief, appellants properly concede, for summary judgment purposes, that they voted not to reappoint Smith solely on account of race;[7] they wanted to appoint an African-American to the position.[8] Two questions thus emerge: whether the act of voting on the appointment of the Board clerk constituted legislative action so as to cloak Lomax and Hightower with legislative immunity; if not, whether, assuming that their conduct operated to deny Smith equal protection of the laws, they are entitled to qualified immunity.
 
 A.
 
 5
 Appellants contend that, because they were engaged in the activity of voting to replace Smith, they are entitled to absolute legislative immunity. Smith contends that employment and personnel decisions are administrative in nature and do not involve the deliberative legislative processes encouraged and protected by the legislative immunity doctrine. We find that Smith's interpretation of the law governing legislative immunity is correct and, moreover, is supported by Eleventh Circuit precedent.
 
 
 6
 Legislative immunity provides protection from suit to government officials when they take actions that are "an integral part of the deliberative and communicative processes by which [legislators] participate in ... proceedings with respect to the consideration and passage or rejection of proposed legislation." Gravel v. United States, 408 U.S. 606, 625, 92 S.Ct. 2614, 2627, 33 L.Ed.2d 583 (1972); see also Yeldell v. Cooper Green Hosp., Inc., 956 F.2d 1056, 1062 (11th Cir.1992) ("Only those acts which are 'necessary to preserve the integrity of the legislative process' are protected." (quoting United States v. Brewster, 408 U.S. 501, 517, 92 S.Ct. 2531, 2540, 33 L.Ed.2d 507 (1972))); Espanola Way Corp. v. Meyerson, 690 F.2d 827, 829 (11th Cir.1982) ("[T]he absolute immunity inquiry becomes one of whether the Commissioners in the instant case were engaging in legislative activity."), cert. denied, 460 U.S. 1039, 103 S.Ct. 1431, 75 L.Ed.2d 791 (1983). Typically, legislators' employment decisions are deemed administrative acts. Yeldell, 956 F.2d at 1062; Abraham v. Pekarski, 728 F.2d 167, 175 (3d Cir.) (concluding that the commissioners' vote to fire plaintiff was not a legislative function, but rather a "managerial" function), cert. denied, 467 U.S. 1242, 104 S.Ct. 3513, 82 L.Ed.2d 822 (1984); cf. Forrester v. White, 484 U.S. 219, 229, 108 S.Ct. 538, 545, 98 L.Ed.2d 555 (1988) (classifying a judge's decision to discharge a probation officer as "administrative"). There can be no question that voting on the appointment of a Board clerk is not the sort of broad "legislative" activity that is typically associated with grants of absolute immunity.
 
 
 7
 Appellants argue, however, that we should not focus on the obviously administrative nature of their decision; rather, they would have us determine that the single act of voting for the person to be appointed clerk rendered their conduct immune from suit. We decline to adopt such a sweeping definition of legislative immunity.
 
 
 8
 Our cases have recognized that a legislator's vote constitutes the act of "legislating," and thus cloaks the legislator with immunity, see, e.g., Brown v. Crawford County, 960 F.2d 1002, 1011 (11th Cir.1992); Espanola Way, 690 F.2d at 829, if the vote is cast for or against the enactment of a law.[9] As we explained in Espanola Way, " 'it is the official function that determines the degree of immunity required, not the status of the acting officer.' Imposing liability upon the Commissioners for actions conducted outside their legislative role does not undermine the policies granting immunity to certain officials." 690 F.2d at 829 (alteration in original) (citation omitted) (quoting Marrero v. City of Hialeah, 625 F.2d 499, 508 (5th Cir.1980), cert. denied, 450 U.S. 913, 101 S.Ct. 1353, 67 L.Ed.2d 337 (1981)); see also Abraham, 728 F.2d at 174 ("The fact that the action complained of resulted from a vote of the members of the governing body is not dispositive" of the issue.).
 
 
 9
 In Crymes v. DeKalb County, 923 F.2d 1482 (11th Cir.1991), we expressly rejected the argument that the act of voting, in itself, constitutes legislative action giving rise to immunity. The plaintiff in Crymes sought money damages under 42 U.S.C. Sec. 1983 on the ground that the county commissioners had deprived him of his property without just compensation and due process of law by voting to uphold an administrative decision to deny him a development permit. The commissioners invoked the protection of legislative immunity. Rejecting their argument, we explained the reach of the legislative immunity doctrine:
 
 
 10
 [I]t has been held that "[a]lthough a local legislator may vote on an issue, that alone does not necessarily determine that he or she was acting in a legislative capacity." Cinevision Corp. v. City of Burbank, 745 F.2d 560, 580 (9th Cir.1984), cert. denied, 471 U.S. 1054, 105 S.Ct. 2115, 85 L.Ed.2d 480 (1985).
 
 
 11
 A legislative act involves policymaking rather than mere administrative application of existing policies. Minton v. St. Bernard Parish School Bd., 803 F.2d 129, 135 (5th Cir.1986) (citing Hornsby v. Allen, 326 F.2d 605, 608-09 (5th Cir.1964)).... If the facts utilized in making a decision are specific, rather than general, in nature, then the decision is more likely administrative. Moreover, if the decision impacts specific individuals, rather than the general population, it is more apt to be administrative in nature. See Cutting v. Muzzey, 724 F.2d 259, 261 (1st Cir.1984).
 
 
 12
 Id. at 1485 (second alteration in original). We noted that the plaintiff's complaint "focused on the [commissioners'] decision to uphold the denial of the development permit" and determined that their decision constituted "the application of policy to a specific party"; therefore, the commissioners were not entitled to legislative immunity. Id. at 1485-86.[10]
 
 
 13
 Likewise, appellants' decision not to reappoint Smith constituted the application of a county policy, expressed in the Fulton County Code, see supra note 1, to a specific party. The decision was not general in nature; rather, it was simply a decision regarding whom to hire. In sum, we are obliged to adhere to our precedent and conclude that the appellants' vote to appoint Hanson to the clerk position was an administrative act and, thus, was not protected by legislative immunity.
 
 B.
 
 14
 The appellants maintain that even if they are not entitled to absolute legislative immunity, their actions were taken in good faith and are protected by qualified immunity. They are protected by such immunity, they contend, because, at the time they cast their allegedly discriminatory votes, it was not clearly established that the Equal Protection Clause forbad them from voting not to employ a person on account of the person's race. Specifically, appellants argue that: (1) it was not clear that the Equal Protection Clause applied to them because it was not clear whether they were protected from Fourteenth Amendment liability by the doctrine of legislative immunity; and (2) it was not clear whether the personal staff exemption, found in Title VII and the ADEA, rendered them exempt from liability under section 1983 for violations of the Equal Protection Clause.[11] We reject both arguments.
 
 
 15
 Qualified immunity enables a public official to avoid liability for an alleged constitutional violation where the law governing the claimed constitutional right was not clearly established at the time of the official's action. In Harlow v. Fitzgerald, 457 U.S. 800, 815-16, 102 S.Ct. 2727, 2737, 73 L.Ed.2d 396 (1982), the Supreme Court discarded the subjective element of its test for good-faith qualified immunity, determining that considerations of the official's state of mind at the time of the alleged offense have "proved incompatible with our admonition ... that insubstantial claims should not proceed to trial." Accordingly, the question we must answer is whether, at the time the appellants exercised the discretionary function of casting their votes to replace Smith, their conduct violated a "clearly established ... constitutional right[ ] of which a reasonable person would have known." Id. at 818, 102 S.Ct. at 2738; see also Stewart v. Baldwin County Bd. of Educ., 908 F.2d 1499, 1503 (11th Cir.1990) ("[T]he relevant question on a motion for summary judgment based on a defense of qualified immunity is whether a reasonable official could have believed his or her actions were lawful in light of clearly established law and the information possessed by the official at the time the conduct occurred.").
 
 
 16
 We need not engage in a lengthy discussion of the patently obvious illegality of racial discrimination in public employment at the time the appellants voted to replace Smith. As we stated in Yeldell, "[i]t can hardly be argued that in ... 1989, when the events leading up to this lawsuit [took] place ... intentional race discrimination in the workplace" did not violate the Fourteenth Amendment. 956 F.2d at 1064 (citing Washington v. Davis, 426 U.S. 229, 239-41, 96 S.Ct. 2040, 2047-48, 48 L.Ed.2d 597 (1976)).
 
 
 17
 For the reasons stated in part II.A. of this opinion, we think it obvious that a reasonable commissioner would have known that his or her vote to replace an employee on account of race was outside the protection of legislative immunity. The applicability of legislative immunity to this situation, however, is of no moment. Appellants cannot breathe new life into their unsuccessful legislative immunity claim by arguing that uncertainty regarding the parameters of legislative immunity rendered the law governing intentional race discrimination unclear. Where applicable, legislative immunity shields a legislator from suit. The grant of legislative immunity is not a declaration that the claimed constitutional right does not exist or that it is not clearly established. Given the clear state of the law prohibiting racial discrimination in public employment at the time the Board voted to replace Smith, no reasonable commissioner, with the information possessed by Lomax and Hightower,[12] would have believed that his or her discriminatory actions were constitutional.
 
 
 18
 We also reject appellants' argument that the law was not clearly established because they believed themselves shielded from section 1983 liability by a statutorily created personal staff exemption. The appellants' argument that, in providing the personal staff exemption contained in Title VII and the ADEA, Congress intended to eliminate section 1983 as a remedy for Equal Protection Clause violations in a setting such as the one before us is patently frivolous.[13]III.
 
 
 19
 Accordingly, we AFFIRM the district court's denial of the appellants' motion for summary judgment.
 
 
 20
 IT IS SO ORDERED.
 
 
 
 [1]
 The Code of Laws of Fulton County, Georgia Sec. 1-3-3 states:
 The term of the clerk ... shall be for ... six (6) years and the person elected to fill such office shall serve for a term of six (6) years or until his successor is appointed and qualified but said clerk shall be subject to removal at the pleasure of said board.
 
 
 [2]
 The Board consisted of seven commissioners. The vote to replace Smith with an African-American took place at a Board meeting on October 25, 1989. Six members were present. Five voted in favor of the replacement; one abstained
 
 
 [3]
 In this opinion, we refer to Smith's amended complaint, which is framed in three counts, as her complaint
 
 
 [4]
 Read literally, counts two and three seek the same relief against Lomax and Hightower in their individual capacities. They could not, however, be considered her employer; Fulton County is her employer. Accordingly, they cannot be held liable under the ADEA or Title VII. See Busby v. City of Orlando, 931 F.2d 764, 772 (11th Cir.1991) ("The relief granted under Title VII is against the employer, not individual employees whose actions would constitute a violation of the Act."); Birkbeck v. Marvel Lighting Corp., 30 F.3d 507, 511 (4th Cir.) ("[T]he ADEA limits civil liability to the employer."), cert. denied, --- U.S. ----, 115 S.Ct. 666, 130 L.Ed.2d 600 (1994); Miller v. Maxwell's Int'l Inc., 991 F.2d 583, 587 (9th Cir.1993) (same), cert. denied, --- U.S. ----, 114 S.Ct. 1049, 127 L.Ed.2d 372 (1994). We therefore construe counts two and three as applying only to Fulton County
 
 
 [5]
 Lomax and Hightower also moved the court for summary judgment on counts two and three of Smith's complaint
 
 
 [6]
 We have jurisdiction to review the district court's rejection of Lomax's and Hightower's claims of legislative and qualified immunity as "an appealable 'final decision' within the meaning of 28 U.S.C. Sec. 1291." Mitchell v. Forsyth, 472 U.S. 511, 530, 105 S.Ct. 2806, 2817, 86 L.Ed.2d 411 (1985) (permitting immediate appellate review of a grant or denial of qualified immunity by applying the collateral order doctrine of Cohen v. Beneficial Industrial Loan Corp., 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949), and extending the rule in Nixon v. Fitzgerald, 457 U.S. 731, 102 S.Ct. 2690, 73 L.Ed.2d 349 (1982) (authorizing immediate appellate review of a grant or denial of legislative immunity))
 In appealing the district court's decision on the immunity issues, appellants contend that the district court should have dismissed Smith's equal protection claim because she did not sue all of the commissioners who voted not to reappoint her. According to appellants, "[i]t does not make sense to allow Smith to potentially sustain a cause of action and obtain damages from only two out of the five commissioners who voted to elect Hanson as clerk." In other words, appellants and the three other commissioners who voted against Smith and in favor of Hanson should be considered joint constitutional tortfeasors who cannot be sued separately. The notion that Smith must sue all or none of the tortfeasors has no bearing on the questions before us: whether the district court should have granted appellants legislative or qualified immunity.
 
 
 [7]
 For purposes of summary judgment on the qualified immunity issue, we consider the record in the light most favorable to the nonmovant, Smith. That is, with respect to the conduct that allegedly constitutes appellants' intent to discriminate against Smith on account of her race, we give Smith the benefit of all inferences that can fairly be drawn from the evidence. Then we ask, on the issue of qualified immunity, whether precedent clearly established that such conduct violated the Equal Protection Clause
 On the legislative immunity issue, the parties' rendition of the material facts do not conflict. The Board voted to replace Smith with an African-American female at its October 25, 1989 meeting; whether that action constituted a legislative decision, as opposed to an administrative (employment) decision, is a pure question of law.
 
 
 [8]
 At least one Board member, Commissioner Lowe, was concerned that the Board's failure to reappoint Smith because of her race might be construed as an act of "reverse discrimination." He therefore put the following question to the County Attorney:
 It is my understanding [that in the opinion of the Fulton County Attorney] there is no such thing as reverse discrimination when this Board has an appointment.... This is not like an employee or is it? ... [I]s this a case that might be considered by a court as being reverse discrimination?
 After first stating, "You don't want me to answer this," the County Attorney replied, "I don't know.... [A]t the time you appoint them you can appoint whoever you please, and the criteria that you use is yours to determine." Shortly thereafter, the Board voted.
 
 
 [9]
 The only case cited by appellants to support their contention that absolute legislative immunity shields a legislator's vote in the context of an employment decision is Hudgins v. City of Ashburn, 890 F.2d 396 (11th Cir.1989). The Hudgins court determined that city council members who failed to reappoint the plaintiff, a city clerk, were entitled to qualified immunity because the plaintiff had failed to demonstrate that her dismissal deprived her of a clearly established property right. In a footnote, the court opined that "the council members ... more appropriately should have asserted the defense of absolute or legislative immunity since 'their challenged conduct furthers legislative duties.' " Id. at 406 n. 20 (quoting Baytree of Inverrary Realty Partners v. City of Lauderhill, 873 F.2d 1407, 1409 (11th Cir.1989)). Baytree, the case cited in Hudgins, concerned a city council's vote to deny rezoning of the plaintiff's property. According to the Baytree court, "[u]nder both federal and Florida law, zoning and land use decision-making ... is normally characterized as a legislative function." 873 F.2d at 1409. For the reasons we give in the text, we reject as dicta the Hudgins court's suggestion that a legislator's employment decision, even when made by vote, is an exercise of legislative decisionmaking that is entitled to the protection of absolute legislative immunity
 
 
 [10]
 The Crymes court did suggest, however, that the commissioners' vote to remove a particular road from the list of available truck routes--a decision from which the plaintiff was specifically excepted--affected the general population, was therefore "legislative in nature," and would have been protected by legislative immunity had it been challenged by a party affected by the change in available routes. Id
 
 
 [11]
 The personal staff exemption to Title VII, essentially repeated in the personal staff exemption to the ADEA, 29 U.S.C. Sec. 630(f), states:
 The term "employee" means an individual employed by an employer, except that the term "employee" shall not include any person elected to public office in any State or political subdivision of any State by the qualified voters thereof, or any person chosen by such officer to be on such officer's personal staff, or an appointee on the policy making level or an immediate adviser with respect to the exercise of the constitutional or legal powers of the office.
 42 U.S.C. Sec. 2000e(f) (emphasis added).
 
 
 [12]
 We reject the appellants' suggestion that the Fulton County Attorney's opinion, given at the October 25 meeting in response to Commissioner Lowe's inquiry whether a decision not to reappoint Smith could be considered "reverse discrimination," demonstrates that the Equal Protection Clause's application to the Board's action was not clearly established. The objective Harlow standard cannot be satisfied by pointing to the reluctant, even cryptic, observations the Board-appointed County Attorney made in response to Lowe's inquiry. See supra note 8
 
 
 [13]
 The argument that the personal staff exemption of these two statutes renders them immune from liability under section 1983 for the equal protection claim in this case assumes that they may be held liable under the statutes for the employment decision at issue. The assumption is false because they cannot be considered the "employer" of the Board's clerk within the meaning of those statutes. See supra note 4. But assuming, for sake of discussion that they are the clerk's employer, their argument is, to put it bluntly, preposterous. Stripped to the bare bones, appellants seem to be saying that Congress, in enacting the personal staff exemption, impliedly repealed section 1983 as a remedy for the sort of equal protection violation alleged in this case. Appellants concede the weakness of their argument in their brief, when they state that they "recognize that applying the personal staff exception to Sec. 1983 claims of race discrimination is a novel application of this statutory exception."