Janet Frances HEALY, Plaintiff,

v.

William J. HENDERSON, Postmaster General of the United States of America, and Andrew Sacco, Defendants.

No. CIV.A.00–CV–10862–JLT.

United States District Court,
D. Massachusetts.

Aug. 7, 2003.

Kevin J. Macdonald, Jamaica Plain, MA, for Plaintiff.

Andrew L. Freeman, U.S. Attorney's Office, North Windsor, CT, Barbara Healy Smith, Boston, MA, Cynthia W. Lie, U.S. Attorney's Office, Boston MA, Robert J. Stevens, Boston, MA, for Defendants.

Robert J. Stevens, Boston, MA, for U.S., William J. Henderson, Defendants.

*MEMORANDUM*

TAURO, District Judge.

## INTRODUCTION

The Plaintiff seeks relief under the Family Medical Leave Act, the Rehabilitation Act of 1973 and federal and state laws prohibiting sex discrimination, alleging that her employer and supervisor subjected her to harassment and discriminatory treatment.

## BACKGROUND

In the context of the current Motion to Dismiss, pursuant to Federal Rule of Civil Procedure 12(b), the court must accept as true the facts alleged in the complaint, construe all reasonable inferences in favor of the Plaintiff, and determine whether the Plaintiff can recover under any cognizable legal theory.[1]

Janet Frances Healy ("Plaintiff") began her employment with the defendant United States Postal Service ("USPS") as a distribution clerk on August 24, 1987.[2] Plaintiff continued in this position until February 1996 when she was transferred to a full-time, maintenance position.[3] Plaintiff alleges that approximately one year after her transfer within the USPS, she was subjected to harassment and abusive treatment by various supervisory personnel of the USPS that continued until the filing of this complaint.[4]

In December 1996, Plaintiff was chosen from a group of four applicants for a 120 day higher-level detail to the "In Plant Support" division of the USPS.[5] Shortly thereafter, Plaintiff's supervisor, Frank Lydon ("Lydon"), advised Plaintiff that he would not release Plaintiff from her current position, telling her, "I did not hire you to go on details."[6] Lydon further stated, in an insulting manner, that "if 'In Plant Support' wanted you for the detail, they would have waited for you and be-

---

1. *See* Fed.R.Civ.P. 12(b)(6); *Beddall v. State St. Bank & Trust Co.,* 137 F.3d 12, 16 (1st Cir.1998).

2. *See* Compl. ¶ 6.

3. *See* Compl. ¶ 6.

4. *See* Compl. ¶ 7.

5. *See* Compl. ¶ 8.

6. Compl. ¶ 11.

sides, I heard the other girl interviewed very well."[7] Upon being informed of the decision to keep her from the higher-level detail, Plaintiff requested to see a union steward.[8]

Plaintiff alleges that after her complaint regarding Lydon's decision, she became the target of constant criticism and vague allegations of poor job-performance from her supervisors, Lydon and Dale Horsman ("Horsman").[9] Believing this behavior to be harassing and unprofessional, Plaintiff spoke to their manager, defendant Andrew Sacco ("Sacco"). Sacco informed Plaintiff that he would instruct Lydon to speak to Plaintiff in a more professional manner.[10] Despite this assurance, Sacco allegedly informed another USPS employee that if the Plaintiff did not improve her attitude, he would see to it that she would be denied the opportunity to join any future details.[11]

After this meeting with Sacco, Plaintiff states that there was increased scrutiny of her every action. For example, Lydon and Horsman would stare at Plaintiff and constantly question her as to routine matters.[12] Plaintiff's supervisors singled her out by issuing written assignments to her for each work shift, the only employee to be given such assignments.[13] Her supervisors even warned other employees not to associate with Plaintiff.[14]

Plaintiff further alleges that this unprofessional treatment developed into sex discrimination. She claims that she was denied requested schedule changes and opportunities to make up missed time, both of which were routinely offered to her male co-workers.[15]

Her supervisors, Lydon and Horsman, also began timing Plaintiff's trips to the ladies' room, questioning her as to the length of time spent in there, and threatening her with disciplinary action for taking too long or for using the ladies' room at the beginning of her shift. On one occasion, upon returning from the ladies' room, Horsman aggressively questioned Plaintiff as to why she had been gone for approximately twenty minutes.[16] Unsatisfied with her answer, Horsman followed through on his earlier threats and disciplined Plaintiff.[17]

On March 26, 1999, Plaintiff submitted a request for leave pursuant to the Family and Medical Leave Act ("FMLA") for a condition that was on file with USPS.[18] Plaintiff even filed a re-certification from her physician regarding her condition. Sacco denied her request, however.[19] Sacco explained that Plaintiff was a difficult employee and he did not care what evidence Plaintiff had to support her request for leave.[20]

As a result of her increasingly oppressive work environment, Plaintiff began suffering from severe depression, insomnia, nightmares, vomiting, a breakdown in her marital relationship, difficulties in her relationship with her children, and other

---

7. Compl. ¶ 12.

8. *See* Compl. ¶ 14.

9. *See* Compl. ¶¶ 15–16.

10. *See* Compl. ¶¶ 17–18.

11. *See* Compl. ¶ 19.

12. *See* Compl. ¶¶ 32, 33.

13. *See* Compl. ¶ 24.

14. *See* Compl. ¶ 20.

15. *See* Compl. ¶ 23.

16. *See* Compl. ¶¶ 26–29.

17. *See* Compl. ¶ 30. The Plaintiff does not specify how she was disciplined.

18. *See* Compl. ¶ 34.

19. *See* Compl. ¶ 35.

20. *See* Compl. ¶ 36.

manifestations of her emotional distress—all conditions of which USPS was aware.[21] In an attempt to escape the stress and to alleviate these symptoms, Plaintiff voluntarily transferred herself to a part-time position in Waltham, Massachusetts. Despite her move, Plaintiff claims Sacco contacted Plaintiff's new supervisor in Waltham to encourage the continued harassment of her.[22]

Plaintiff now sues the USPS for violations of FMLA and the Rehabilitation Act of 1973 against the USPS. Plaintiff also brings this suit against Andrew Sacco, individually, for sexual discrimination, sexual harassment, and retaliation, in violation of both Title VII [23] and Massachusetts General Laws.[24] Defendants move to dismiss the Title VII and state law claims for lack of subject matter jurisdiction and the Rehabilitation Act claim for failure to state a claim upon which relief can be granted.

### DISCUSSION

#### A. *Plaintiff's Title VII Claims*

Counts VIII, IX, X, and XI of the Complaint allege that Defendant Andrew Sacco's actions are in violation of Title VII prohibitions against sexual discrimination (hostile environment), sexual harassment, and retaliation. Before considering the merits of the allegations, the court must first determine whether an individual may be liable under Title VII.

Title VII prohibits "an employer to discharge an individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's ... sex." [25] "Employer" is defined as "a person engaged in an industry affecting commerce who has fifteen or more employees ... and any agent of such a person." [26] This court has noted a split among jurisdictions on the issue of whether "by including the term 'agent' in the definition of the word 'employer,' Congress intended to impose individual liability on those employees of the employer entity who act in a supervisory capacity ..." [27]

The First Circuit Court of Appeals has yet to definitively address this issue.[28] This court, therefore, must undertake its own analysis of the significance of the term "any agent" in the definition of "employer." Statutory interpretation must begin and end with the plain language of the statute if the language "speaks with clarity to an issue." [29] Upon first reading the statute at hand, the phrase "and any agent" might appear to signify that an employer *and* an agent may be separately liable under Title VII.[30] The Supreme

---

21. *See* Compl. ¶¶ 38, 39.

22. *See* Compl. ¶ 44.

23. The Civil Rights Act of 1964, 42 U.S.C. § 2000e–16(a).

24. Mass. Gen. Laws chs. 151B and 214 § 1C.

25. 42 U.S.C. § 2000e–2(a)(1).

26. 42 U.S.C. § 2000e(b).

27. *Chatman v. Gentle Dental Ctr. of Waltham,* 973 F.Supp. 228, 237 (D.Mass.1997) (Lindsay, J.).

28. *See Morrison v. Carleton Woolen Mills, Inc.,* 108 F.3d 429, 444 (1st Cir.1997).

29. *Estate of Cowart v. Nicklos Drilling Co.,* 505 U.S. 469, 475, 112 S.Ct. 2589, 120 L.Ed.2d 379 (1992).

30. *See, e.g., Ruffino v. State St. Bank & Trust Co.,* 908 F.Supp. 1019, 1048 (D.Mass.1995) (Gertner, J.) (holding "the plain meaning of § 2000e(b) [is that] both employers as entities, and their agents, as individuals, are to be bound by Title VII's dictates").

Court, however, has also stated, "in expounding a statute, we must not be guided by a single sentence or member of a sentence, but look to the provisions of the whole law, and to its object and policy."[31]

As noted in *Chatman*, "the language [of the definition of "employer"] is far from clear when read in conjunction with other provisions of Title VII."[32] Title VII has several provisions that require employers to perform certain record-keeping duties.[33] If the definition of "employer" were to be read literally, agents, in addition to employers, would have to abide by these guidelines, a result that does not likely seem to have been intended by Congress.[34]

Title VII's remedy provisions are also inconsistent with the notion that an "agent" is to be included in the definition of "employer." Title VII provides for such possible remedies as "reinstatement," and "backpay."[35] Ordinarily, an agent has neither the capability nor the authority to provide such remedies, as such activities tend to be solely the responsibility of the employer.[36]

The language of Title VII also manifests an intent to protect small employers, as it exempts companies with fewer than fifteen employees from liability.[37] Several courts have deemed it "inconceivable" that Congress would want to protect small employers yet at the same time allow liability against individual agents.[38]

■ For these reasons, this court joins the other jurisdictions (including every circuit court that has interpreted Title VII's definition of "employer"[39] and the

---

31. *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 51, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987).

32. *Chatman*, 973 F.Supp. at 238.

33. "Every employer...subject to this title shall, (1) make and keep such records relevant to the determinations of whether unlawful employment practices have been or are being committed, (2) preserve such records for such periods...." Likewise, 42 U.S.C. § 2000e–10 states, "(a) Every employer... shall post and keep posted in conspicuous places upon its premises...summaries of, the pertinent provisions of this title and information pertinent to the filing of a complaint. (b) A willful violation of this section shall be punishable by a fine of not more than $100 for each separate offense." 42 U.S.C. § 2000e–8(c).

34. *See e.g., Horney v. Westfield Gage Co.*, 95 F.Supp.2d 29, 34 (D.Mass.2000) (Neiman, M.J.) (citing *Tomka v. Seiler Corp.*, 66 F.3d 1295, 1314 (2d Cir.1995)); *Chatman*, 973 F.Supp. at 238.

35. 42 U.S.C. § 2000e–5(g)(1).

36. *See Horney*, 95 F.Supp.2d. at 34 (citing *Tomka*, 66 F.3d at 1314).

37. 42 U.S.C. § 2000e(b) defines "employer," in relevant part, as "a person engaged in an industry affecting commerce who has fifteen or more employees ... and any agent of such person."

38. *See, e.g., Tomka*, 66 F.3d at 1314 (citing *Miller v. Maxwell's Int'l Inc.*, 991 F.2d 583, 587 (9th Cir.1993)); *Horney*, 95 F.Supp.2d at 34; *Chatman*, 973 F.Supp. at 239.

39. Only the First Circuit has yet to the address the issue of individual liability under Title VII. Each of the eleven other circuits has asserted that individual employees, agents, and/or supervisors are not liable under Title VII. *Tomka*, 66 F.3d at 1313–14; *Sheridan v. E.I. DuPont de Nemours & Co.*, 100 F.3d 1061, 1078 (3d Cir.1996), *cert denied*, 521 U.S. 1129, 117 S.Ct. 2532, 138 L.Ed.2d 1031 (1997); *Lissau v. S. Food Serv., Inc.*, 159 F.3d 177, 180 (4th Cir.1998); *Grant v. Lone Star Co.*, 21 F.3d 649, 653 (5th Cir.1994), *cert denied*, 513 U.S. 1015, 115 S.Ct. 574, 130 L.Ed.2d 491 (1994); *Wathen v. Gen. Elec. Co.*, 115 F.3d 400, 405 (6th Cir.1997); *Williams v. Banning*, 72 F.3d 552, 555 (7th Cir.1995); *Bonomolo–Hagen v. Clay Central–Everly Cmty. Sch. Dist.*, 121 F.3d 446, 446 (8th Cir.1997); *Miller*, 991 F.2d 583, 588 (9th Cir.1993), *cert denied*, 510 U.S. 1109, 114 S.Ct. 1049, 127 L.Ed.2d 372 (1994); *Haynes v. Williams*, 88 F.3d 898, 901 (10th Cir.1996); *Smith v. Lomax*, 45 F.3d 402, 403–404, n. 4 (11th Cir. 1995); *Gary v. Long*, 59 F.3d 1391, 1399

majority of District Courts in the First Circuit [40]) that have concluded that Congress did not intend to impose individual liability upon agents of an employer. The phrase "and any agent of such a person," was intended by Congress to establish traditional respondeat superior liability. That is, "the phrase...simply means that an employer is liable for acts of those employees acting within the scope of their employment, but does not extend liability beyond the employer to the individual harasser." [41] The court, therefore, rejects Plaintiff's argument that individuals may be held liable under Title VII and dismisses Plaintiff's claims of individual liability against Andrew Sacco.

■ With the federal claims against Andrew Sacco now dismissed, the court declines to extend its ancillary jurisdiction over the state law claims against him. These claims are, therefore, dismissed. [42]

## B. *Plaintiff's Rehabilitation Act Claim*

■ In Count VII of her Complaint, Plaintiff alleges Defendants violated the Rehabilitation Act of 1973 [43] by refusing her request for reassignment, sought to alleviate her depression. [44] As the first element of proof in a Rehabilitation Act claim, Plaintiff must establish that she has a disability covered by the Act. [45] Merely having an impairment, however, does not necessarily qualify one as "disabled" for the purposes of the Act. [46] In order to demonstrate that she has a disability, Plaintiff must establish that she "i) has a mental or physical impairment which substantially limits one or more of [her] major life activities; ii) has a record of such

(D.C.Cir.1995), *cert denied*, 516 U.S. 1011, 116 S.Ct. 569, 133 L.Ed.2d 493, (1995).

40. *See, e.g., Horney*, 95 F.Supp.2d at 33; *Meara v. Bennett*, 27 F.Supp.2d 288, 291–92 (D.Mass.1998) (Ponsor, J.) (citing *Chatman*, 973 F.Supp. at 239); *Danio v. Emerson Coll.*, 963 F.Supp. 61, 62 (D.Mass.1997) (Young, J.); *but see Ruffino*, 908 F.Supp. 1019, 1047–48 (D.Mass.1995) (Gertner, J.) (holding that individuals can be liable under Title VII).

41. *Horney*, 95 F.Supp.2d at 33 (citing *Tomka*, 66 F.3d at 1316).

42. Even if the Court were to choose to extend its ancillary jurisdiction here, the state law claims under M.G.L. 151B and 214 § 1C would still be subject to dismissal. In *Brown v. Gen. Servs. Admin.*, 425 U.S. 820, 831–33, 96 S.Ct. 1961, 48 L.Ed.2d 402 (1976), the Supreme Court held that the Civil Rights Act of 1964 is the "exclusive and pre-emptive administrative and judicial scheme for redress of federal employment discrimination." Since Plaintiff is a federal employee, she must avail herself of federal law rather than seek remedy in Massachusetts's anti-discrimination laws.

43. 29 U.S.C. § 701, et. seq.

44. Compl. ¶ 69.

45. *Gillen v. Fallon Ambulance Serv., Inc.*, 283 F.3d 11, 21 (1st Cir.2002) lays out the standard for a claim under the Americans with Disabilities Act of 1990 ("ADA"), which also applies to a claim under the Rehabilitation Act of 1973. As stated in *Bragdon v. Abbott*, 524 U.S. 624, 631–632, 118 S.Ct. 2196, 141 L.Ed.2d 540 (1998), "The ADA's definition of disability is drawn almost verbatim from the definition of 'handicapped individual' included in the Rehabilitation Act of 1973 ... and in the Fair Housing Amendments Act of 1988 .... Congress' repetition of a well-established term carries the implication that Congress intended the term to be construed in accordance with pre-existing regulatory interpretations." Additionally, Congress adopted a provision in the ADA that states, "[N]othing in this chapter shall be construed to apply a lesser standard than the standards applied under Title V of the Rehabilitation Act of 1973 .... The directive requires us to construe the ADA to grant at least as much protection as provided by the regulations implementing the Rehabilitation Act." *Id.* Hence, the definition of "disability" under the ADA applies equally to define "disability" under the Rehabilitation Act.

46. *Toyota Motor Mfg. v. Williams*, 534 U.S. 184, 195, 122 S.Ct. 681, 151 L.Ed.2d 615 (2002).

impairment; or iii) is regarded as having such an impairment." [47]

■ The Supreme Court, in *Toyota Motor Manufacturing v. Williams*,[48] clarified this proof model. In order to be considered an individual that is "substantially limited" in a "major life activity," the individual "must have an impairment that prevents or severely restricts the individual from doing activities that are of central importance to most people's daily lives. The impairment's impact must also be permanent or long term." [49]

■ Here, the activity that is of "central importance" to the Plaintiff is the performance of her job. The Equal Employment Opportunity Commission defined "substantially limited" in this context to mean, "significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities." [50] The Plaintiff claims that she suffered from "severe depression, insomnia, nightmares, vomiting, a breakdown in her marital relationship, difficulties in her relationship with her children, and other manifestations of her extreme emotional distress." [51] While such ailments are unfortunate and likely to make one uncomfortable at her workplace, Plaintiff has not alleged that any one of her impairments actually prevent or restrict her from performing her duties as an employee of the United States Postal Service. Plaintiff, therefore, has not established that she is a disabled individual within the meaning of the Rehabilitation Act of 1973 and her claim must be dismissed.

### C. *Plaintiff's Claims Under the Family Medical Leave Act (FMLA)*

In Count V of her complaint, Plaintiff asserts a claim for damages under FMLA.[52] Plaintiff alleges that she submitted a leave request seeking to have her leave excused under FMLA and alleges that this request was unreasonably and improperly denied.[53] To make out a prima facie case of a FMLA violation, Plaintiff must demonstrate that she was subjected to an adverse employment action as a result of the alleged violation.[54] In her complaint, Plaintiff claims that the denial of her FMLA request has caused her to suffer "lost income, loss of business and personal reputations, and other financial losses, severe emotional and mental distress, physical injuries and loss of enjoyment of life." [55]

---

**47.** 42 U.S.C. § 12102(2)(A–C); *see also Toyota Motor Mfg.*, 534 U.S. at 185, 122 S.Ct. 681 ("It is insufficient for individuals attempting to prove disability status under this test to merely submit evidence of a medical diagnosis of an impairment. Instead, the ADA requires them to offer 'evidence that the extent of the limitation caused by their impairment in terms of their own experience is ... substantial.' ").

**48.** 534 U.S. 184, 122 S.Ct. 681, 151 L.Ed.2d 615 (2002).

**49.** *Id.* at 198, 122 S.Ct. 681.

**50.** 29 C.F.R. § 1630.2(i).

**51.** Compl. ¶ 38.

**52.** 29 U.S.C. § 2601 et seq.

**53.** Compl. ¶ 63.

**54.** *Keeler v. Putnam Fiduciary Trust Co.*, 238 F.3d 5, 9–10 (1st Cir.2001); *see also Watkins v. J & S Oil Co., Inc.*, 164 F.3d 55, 60 (1st Cir.1998) (citing *Oswalt v. Sara Lee Corp.*, 889 F.Supp. 253, 259 (N.D.Miss.1995) ("In order to establish a prima facie case for a FMLA violation, a plaintiff must show that (1) he is protected under the Act; (2) he suffered an adverse employment decision; and (3) either he was treated less favorably than an employee who had not requested FMLA leave or the adverse decision was made because of his request for leave.")).

**55.** Compl. at ¶ 64.

The Parties have conducted some initial discovery which has been relied upon by both Parties in their motions and in their oral arguments. The court thus has sufficient evidence on the FMLA claim to convert, sua sponte, the Defendants' Motion to Dismiss to a Motion for Summary Judgment pursuant to Fed.R.Civ.P. 12(b) and Fed.R.Civ.P. 56(c).[56] Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."[57] When a trial court decides a motion for summary judgment, it "examines the entire record in the light most flattering to the nonmovant and indulges all reasonable inferences in that party's favor."[58]

In the Plaintiff's Opposition to the Defendants' Motion to Dismiss in Part and For Summary Judgment in Part, Plaintiff clarified that her actual damage was that the denial of her FMLA request resulted in three "unscheduled" absences which subjected her to the possibility of future disciplinary action.[59] Both Parties agree that the FMLA denial led to the *possibility* of disciplinary action, but that Plaintiff has not *actually* been disciplined.[60] The mere possibility of disciplinary action by an employer does not qualify as an "adverse action" as required by the First Circuit.[61] Plaintiff, therefore, has not suffered any damage as a result of the denial of her FMLA request and summary judgment is, therefore, granted in favor of the Defendants on Count V.

## CONCLUSION

For the reasons stated above, the Defendants' Motions to Dismiss the Title VII and Rehabilitation Act claims is ALLOWED. The court declines to extend its ancillary jurisdiction over the State law claims of discrimination, harassment and retaliation. The Defendants' Motion to Dismiss the FMLA claim has been converted to a Motion for Summary Judgment which is ALLOWED in favor of the Defendants. The case is, therefore, DISMISSED in its entirety.

AN ORDER WILL ISSUE

---

56. *See Velazquez–Rivera v. Danzig*, 234 F.3d 790, 794 (1st Cir.2000) ("Noticing that matters outside the pleadings were submitted to both sides, the district court properly converted defendant's motion to dismiss to a motion for summary judgment pursuant to Fed.R.Civ.P. 12(b)."); *see also* Fed.R.Civ.P. 12(b) stating that, "if on a motion...to dismiss for failure of a pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56". The court does not believe notice to Plaintiff of the conversion is at issue since the evidence and issues considered here were both briefed and argued by the Plaintiff.

57. Fed.R.Civ.P. 56(c).

58. *Cadle Co. v. Hayes*, 116 F.3d 957, 959 (1st Cir.1997) (internal citations and quotations omitted).

59. Plaintiff's Opp'n at p. 13. Despite being denied her request for FMLA to cover three days of absences between March 23–25, 1999, Plaintiff was granted unpaid leave for two days and paid leave for the remaining day; *see also,* Sacco Dec. at pp. 2–3.

60. Sacco Dec. at 3.

61. *See Keeler,* 238 F.3d at 10; *Watkins,* 164 F.3d at 59.