[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 14-15237
Non-Argument Calendar
_____

D.C. Docket No. 5:12-cv-00416-JRH-BKE


JOHN C. TOBAR,

                                                    Plaintiff-Appellant,

versus

FEDERAL DEFENDERS MIDDLE DISTRICT OF GEORGIA, INC.

                                                    Defendant-Appellee,


CYNTHIA ROSEBERRY,
Director,

                                                    Defendant.

_____

Appeal from the United States District Court
for the Middle District of Georgia
_____

(July 8, 2015)

Before ED CARNES, Chief Judge, JORDAN, and JILL PRYOR, Circuit Judges.

PER CURIAM:

John Tobar, proceeding pro se, appeals the district court's grant of summary judgment to his former employer, the Federal Defenders of the Middle District of Georgia, Inc. (Federal Defenders), on his claims of discrimination under the Age Discrimination in Employment Act (ADEA).

I.

In October 2007, Federal Defenders — a nonprofit corporation that provides criminal defense services to indigent persons — hired Tobar as an investigator. Tobar's 2008 and 2009 performance evaluations were satisfactory and he earned salary increases both years.

On September 1, 2009, Cynthia Roseberry began her tenure as the Federal Defenders' Executive Director and Tobar's direct supervisor. She authored the second of Tobar's satisfactory performance evaluations shortly after her arrival. The report indicated that Tobar was "courteous and cooperative," he "communicate[d] clearly and effectively," and he was "helpful in dealing with personnel and clients."

Approximately one year later, however, Roseberry's perception of Tobar's performance had changed. She explained during her deposition that Tobar did not properly analyze discovery documents, did not utilize appropriate sources for

2

gathering data, did not identify his sources, and was not proficient with office technology.  Roseberry met with Tobar more than once to make him aware of her concerns, particularly as they related to his written reports, which she claimed were too informal, prone to "misguided" conclusions, and sometimes completely off-topic.

Roseberry also received complaints from several Federal Defenders attorneys about Tobar's work product, including Catherine Williams and Christina Hunt.  Williams, who had written a positive recommendation for Tobar in February 2009, testified that his work product "declined" in 2010 and she became "cautious" about soliciting work from him because his interactions with witnesses and clients were not professional (e.g., he used "slang terminology").  Hunt testified that Tobar's written reports lacked critical details, such as the names or contact information of the people he had interviewed.  It was, according to Hunt, "very difficult to get [Tobar] to do anything without very specific instructions." At one point, Hunt told Roseberry that she had reason to believe that Tobar (a non-lawyer) was giving legal advice to clients, in violation of the office's explicit policy against it.

On or about March 20, 2011, Federal Defenders had an office birthday celebration for several employees, including Tobar, who was turning 62.  At the celebration, Hunt said to Tobar, "You should be very happy that you are close to

3

retirement." Tobar interpreted the comment as indicating that he was too old for the job and needed to go. Hunt testified that it was a joke.

A little less than a month after the birthday celebration, on or around April 7, 2011, Roseberry became upset after she learned that Tobar had made an open records request to a state court judge on behalf of the office. According to Tobar, Roseberry "blew up" and "became verbally abusive," loud enough to be heard "down the hall and all over the place." Later that day, she again "blew up" when Tobar returned to her office to explain why he had contacted the judge.

Approximately two weeks later, on or around April 19, 2011, Roseberry sent Tobar a formal letter outlining issues with his performance and work product. She wrote that the open records request to the judge "reflect[ed] poor decision making . . . and a lack of understanding of the role of a judge in the criminal justice system," and characterized Tobar's "insistence that [the request] was the correct course of action" as a "refusal to [learn] . . . the proper procedure for requesting records." Roseberry also mentioned a two-paragraph "mitigation report" that Tobar had submitted in connection with a different case. She said that his performance on that report was "significantly below the standards outlined in [his] job description."

Roseberry concluded the letter by informing Tobar that he was being placed on a ninety-day "Performance Improvement Plan" (PIP). She explained that

4

during that time he would be expected to improve his "investigative knowledge and skills" in several areas, including his understanding of the proper procedure for requesting records, his writing skills, and his knowledge of "mitigation and mitigation reporting." She also instructed him to schedule a meeting with her every thirty days to discuss his progress.[1]

Both before and after she placed him on the PIP, Roseberry took several steps to assist Tobar in improving his performance. She sent him the contact information of investigators she had worked with in the past so that he could solicit their feedback on his work or obtain samples of good investigation and mitigation reports. She provided him with charts on how to source information. Finally, she offered to enroll Tobar in a grammar course and provided him with copies of articles on grammar mechanics.

According to Tobar, he met with Roseberry only once during his probationary period, but they had "a couple of coffeepot conversations about things." Tobar also testified that he reached out to at least one of Roseberry's former colleagues, but never received a response. He declined the grammar course at first, but later decided that it was a good idea and communicated that to Roseberry by email. She never responded.

---

[1] Tobar, an at-will employee, had previously signed a form acknowledging his understanding of an official Federal Defenders policy that allows the executive director (here, Roseberry) "to terminate for failure to meet applicable standards . . . at any time whether or not the employee has been placed on [a PIP]."

Tobar's probationary period ended in July 2011.  In August 2011, Tobar submitted a discovery review that merely listed documents.  Roseberry sent him an email explaining that the report was inadequate because, as she had explained to him earlier, he needed to summarize the contents of the discovery documents and include the Bates numbers where the documents could be located.  In September 2011, Tobar was asked to investigate expenditures on a Vietnamese client's credit card in connection with a fraud prosecution.  The report he submitted focused instead on the culture of gambling in Asian communities.  Roseberry thought the information was irrelevant and unhelpful.

Roseberry terminated Tobar in late October 2011 for poor performance. Tobar testified that he never received a 2010 performance evaluation.  His 2011 performance evaluation, which he received after he was terminated, is in the record.  The evaluation commended Tobar's "good attitude" and his "sincere" effort to be a team player, but concluded that his knowledge of the law was deficient and that he did not have "the skills necessary to perform professional investigative work."

Federal Defenders temporarily replaced Tobar with a 30-year-old and then later permanently filled his position with a 38-year-old.  Tobar points to the layoff of a 58-year-old investigator one year after he was terminated as evidence of Federal Defenders' alleged intent to eliminate the oldest people in the office.

6

In October 2012, Tobar filed this lawsuit against the Federal Defenders and Roseberry alleging various violations of the ADEA and the Americans with Disabilities Act (ADA) in connection with his termination.   Federal Defenders filed a motion to dismiss for failure to state a claim.  In February 2013, the district court granted the motion as to Tobar's ADA claim, as well as all claims asserted against Roseberry.[2]   It allowed his ADEA claim to proceed.  A few weeks later, Tobar filed an amended complaint which, liberally construed, reasserts his employment discrimination claim under the ADEA and asserts new claims for constructive discharge and/or hostile work environment.  After discovery, the Federal Defenders filed a motion for summary judgment on all of the claims.  The district court granted it.

This is Tobar's appeal.

---

[2] The district court correctly dismissed Roseberry from the lawsuit because there is no individual liability under the ADEA or the ADA.  See Albra v. Advan, Inc., 490 F.3d 826, 830 (11th Cir. 2007) ("[I]ndividual liability is precluded for violations of the ADA's employment discrimination provision."); Smith v. Lomax, 45 F.3d 402, 403 n.4 (11th Cir. 1995) (stating that individuals cannot be held liable under the ADEA).  It dismissed Tobar's ADA claim because he had not complained of disability-based discrimination in his EEOC charge.  See Wilkerson v. Grinnell Corp., 270 F.3d 1314, 1317 (11th Cir. 2001) (stating that a plaintiff must exhaust administrative remedies before bringing an ADA claim in federal court).  Tobar's notice of appeal does not indicate that he is challenging the court's order on the Federal Defenders' motion to dismiss, but his initial brief mentions his ADA claim.  In any event, we agree with the district court that Tobar's ADA claim fails as a matter of law because he did exhaust his administrative remedies.  See 42 U.S.C. §§ 12117(a), 2000e-5(e)(1).

7

II.

We review de novo a district court's order granting summary judgment, viewing the evidence in favor of the nonmoving party.  Vessels v. Atlanta Indep. Sch. Sys., 408 F.3d 763, 767 (11th Cir. 2005).  "Pro se pleadings are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed."  Tannenbaum v. United States, 148 F.3d 1262, 1263 (per curiam) (11th Cir. 1998).   But at the summary judgment stage, a pro se litigant does not escape his burden of establishing that there is a genuine issue of material fact.  Brown v. Crawford, 906 F.2d 667, 670 (11th Cir. 1990).[3]

The ADEA prohibits an employer from discriminating against an employee with respect to his compensation, terms, conditions, or privileges of employment on the basis of his age.  29 U.S.C. § 623(a)(1).  Where an employee relies on circumstantial evidence to prove intentional discrimination under the ADEA, as Tobar does here,[4] we analyze the claim under the framework established in

---

[3] Tobar has attempted to raise new claims throughout this litigation.  The district court correctly rejected his postemployment retaliation claim raised for the first time in response to the Federal Defenders' motion for summary judgment, at which point he was required to amend his complaint in accordance with Federal Rule of Civil Procedure 15 in order to raise a new claim. In his brief to this Court, he makes several references to laws other than the ADEA, such as the Disabled Veterans Act.  We have repeatedly held that we will not consider a claim raised for the first time on appeal.  See, e.g., Access Now, Inc. v. Sw. Airlines Co., 385 F.3d 1324, 1331 (11th Cir. 2004).  We make no exception here.

[4] To the extent Tobar argues that Hunt's comment at the birthday party was direct evidence of discrimination, we reject that argument.  A stray remark by a non-decisionmaker does not constitute direct evidence of discrimination, which we have defined as "evidence which reflects 'a discriminatory or retaliatory attitude correlating to the discrimination or retaliation completed

McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817 (1973).  See

Sims v. MVM, Inc., 704 F.3d 1327, 1332–33 (11th Cir. 2013).  Under that

framework, if the plaintiff establishes a prima facie case of discrimination, and the

employer proffers a legitimate, nondiscriminatory reason for its employment

decision, then the employee must show that the seemingly legitimate reason the

employer gave was pretextual.  See id.

We agree with the district court that Tobar has made out a prima facie case

of discrimination and Federal Defenders has proffered a legitimate reason for its

decisions to terminate him (i.e., poor performance).  We also agree that Tobar's

circumstantial evidence of pretext is not adequate to create a genuine issue of

material fact on the issue of pretext.   Hunt's remark at Tobar's birthday party that

he "should be very happy that [he was] close to retirement" is the only evidence

from which an inference of discriminatory animus might be drawn.[5]  But that weak

inference is rendered worthless by the fact that it was Roseberry, not Hunt, who

made the decision to terminate Tobar, and she made it approximately seven months

after the birthday party.

---

of by the employee.'"  Damon v. Fleming Supermarkets of Fla., Inc., 196 F.3d 1354, 1358 (11th Cir. 1999) (quoting Carter v. Three Springs Residential Treatment, 132 F.3d 635, 641 (11th Cir. 1998).

[5] Tobar urges us to also draw an inference from the layoff of his 58-year-old coworker, but the lack of temporal proximity between Tobar's termination and that layoff (i.e., approximately one year) leads us to conclude that no such inference is warranted.

The remainder of Tobar's "evidence" is not evidence, but argument against Roseberry's conclusion that his performance was subpar.  We have been clear that an employee cannot succeed in establishing pretext "by simply quarreling with the wisdom of [the employer's proffered] reason."  Chapman v. Al Transport, 229 F.3d 1012, 1030 (11th Cir. 2000); see also Elrod v. Sears, Roebuck & Co., 939 F.2d 1466, 1470 (11th Cir. 1991) ("No matter how medieval a firm's practices, no matter how high-handed its decisional process, no matter how mistaken the firm's managers, the ADEA does not interfere.  Rather, our inquiry is limited to whether the employer gave an honest explanation of its behavior.") (quoting Mechnig v. Sears, Roebuck & Co., 864 F.2d 1359, 1365 (7th Cir. 1988)).   Simply put, no reasonable jury would find, based on the evidence in the record, that Federal Defenders' proffered reason for terminating Tobar was a pretext for age-based discrimination.

Tobar's other claims are also fundamentally flawed.  His claim of constructive discharge fails as a matter of law because he did not resign; he was terminated.  See Hipp v. Liberty Nat. Life Ins. Co., 252 F.3d 1208, 1231 (11th Cir. 2001) (stating that a plaintiff trying to prove constructive discharge must show "that working conditions were so intolerable that a reasonable person in [his] position would have been compelled to resign.") (emphasis added) (quotation marks omitted).  And his claim of hostile work environment fails because he has

10

not presented evidence that the workplace was "permeated with discriminatory intimidation, ridicule, and insult that [was] sufficiently severe or pervasive to alter the conditions of [his] employment and create an abusive working environment." Harris v. Forklift Sys., Inc., 510 U.S. 17, 21, 114 S.Ct. 367, 370 (1993) (citations omitted) (internal quotation marks omitted).

**AFFIRMED.**